UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

---

Appeal No. 23-1301

---

**KATHLEEN LIEBAU**
Plaintiff-Appellant

v.

**DYKEMA GOSSETT, PLLC**
Defendant-Appellee

---

**PLAINTIFF-APPELLANT'S APPEAL BRIEF**

---

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
Case No. 4:21-cv-11823
Honorable Shalina D. Kumar

---

STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff-Appellant
Brian J. Farrar (P79404)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

---

**Oral Argument Requested**

## DISCLOSURE OF CORPORATE
## AFFILIATIONS AND FINANCIAL INTERESTS

Pursuant to Sixth Circuit Rule 26.1, Plaintiff-Appellant makes the following disclosure:

1.   Are any of said parties a subsidiary or affiliate of a publicly owned corporation?

     No.

2.   Is there a publicly owned corporation, not a party to the appeal, who has a financial interest in the outcome?

     No.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P. C.

By:   /s/Brian J. Farrar
      Brian J. Farrar (P79404)
      Attorneys for Plaintiff-Appellant
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500

Dated:  July 20, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ iv-v

STATEMENT IN SUPPORT OF ORAL ARGUMENT ............................ vi

JURISDICTIONAL STATEMENT ............................................ vii

STATEMENT OF ISSUES........................................................ viii

STATEMENT OF THE CASE .................................................... 1

STATEMENT OF FACTS ........................................................ 2

    A.    Liebau was a loyal and dedicated employee for nearly 35 years.................................................................... 2

    B.    Liebau received positive performance reviews from the attorneys she worked with.......................................... 3

    C.    Dykema throws Liebau a 50th birthday "party" filled with ageist tropes and stereotypes ...................................... 5

    D.    Larsen's refusal to move the wheelchair served to further demean and embarrass Liebau .................................... 5

    E.    As her manager, Larsen is openly hostile to Liebau from day one ................................................................. 6

    F.    When Liebau refuses to retire and threatens to take legal action, Larsen and Choma paper Liebau's file with bogus performance write-ups ............................................. 7

    G.    Dykema terminates Liebau ...................................... 9

SUMMARY OF ARGUMENT .................................................. 10

ARGUMENT......................................................................... 12

    I.    Standard of Review................................................ 12

    II.    Age Discrimination under the ADEA and ELCRA .................. 13

        A.    The District Court correctly found that plaintiff established a prima facie case of discrimination................ 15

        B.    Liebau has sufficient evidence of pretext .......................... 18

1.   Larsen's age-bias can be imputed to Dykema .......... 19

2.   Dykema is also liable under the Cat's Paw theory
     ................................................................................. 22

3.   A jury could reject Dykema's purported reasons
     for firing Liebau ..................................................... 25

III.   Retaliation under the ADEA and ELCRA ................................. 35

CONCLUSION ........................................................................................ 40

# TABLE OF AUTHORITIES

## Case Law

*Anderson v Liberty Lobby, Inc,* 477 US 242 (1986) ............................................. 13

*Blair v Henry Filters, Inc,* 505 F3d 517 (6th Cir 2007) ....................................15-16

*Bledsoe v Tennessee Valley Auth Bd of Directors*, 42 F4th 568 (6th Cir 2022) ...22, 25

*Braun v Ultimate Jetcharters, LLC,* 828 F3d 501 (6th Cir 2016)........................ 37

*Cazzola v Codman and Shurtleff Inc,* 751 F2d 53 (1st Cir 1984) ........................ 27

*Chen v Dow Chem Co,* 580 F3d 394 (6th Cir 2009) ................................. 15, 26-27

*Cline v Catholic Diocese of Toledo*, 206 F3d 651 (6th Cir 2000).......................... 15

*Debrow v Century 21 Great Lakes, Inc,* 463 Mich 534 (2001) ............................. 15

*DeNoma v Hamilton Cnty. Court of Common Pleas*, 626 F Appx 101
  (6th Cir 2015) ..................................................................................... 24

*Dews v AB Dick Co,* 231 F3d 1016 (6th Cir 2000) ............................................ 26

*EEOC v Ford*, 782 F3d 753 (6th Cir 2015) ................................................21, 23

*EEOC v New Breed Logistics*, 783 F3d 1057 (6th Cir 2015)................................ 23

*EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831 (6th Cir 1997)....................... 26

*Fuentes v Perski*, 32 F3d 759 (3d Cir 1994) .................................................... 33

*Griffin v Finkbeiner*, 689 F3d 584 (6th Cir 2012) ............................................ 15

*Gross v FBL Financial Services Inc*, 557 US 167 (2009)..................................... 16

*Hazle v Ford Motor Co,* 464 Mich 456 (2001) .................................................. 15

*Hertz v Luzenac America*, 370 F3d 1014 (10th Cir 2004) ................................... 30

*Kline v Tennessee Valley Auth*, 128 F3d 337 (6th Cir 1997) ............................... 14

*Madden v Chattanooga City Wide Serv Dept*, 549 F3d 666 (6th Cir 2008)............ 24

*Marshall v The Rawlings Company,* 854 F3d 368 (6th Cir 2017) ...................22, 23

*McDonnell-Douglas v Green,* 411 US 792; 93 S Ct 1817 (1973)....................14, 35

*Minevich v Spectrum Health-Meier Heart Ctr,* 1 F Supp 3d 790
  (WD Mich, 2014)................................................................................. 36

*Mitchell v Toledo Hosp,* 964 F2d 577 (6th Cir 1992)......................................... 18

*NLRB v Southwestern Bell Telephone Co,* 694 F2d 974 (5th Cir 1982)................. 30

*NLRB v Steiner Film, Inc,* 669 F2d 845 (1st Cir 1982) ...................................... 30

*Norfolk & W Ry Co v McKenzie*, 116 F2d 632 (6th Cir 1941)............................. 33

*Reeves v Sanderson Plumbing Products, Inc*, 530 US 133 (2000) .............. 14, 18, 26

*Risch v Royal Oak Police Dep't*, 581 F3d 383 (6th Cir 2009) ............................. 22

*Ross v Campbell Soup Co*, 237 F3d 701 (6th Cir 2001) ...................................... 27

*Rowe v Cleveland Pneumatic Co, Numerical Control, Inc*, 690 F2d 88
  (6th Cir 1982) ..................................................................................... 29

*Sloat v Hewlett-Packard Enter Co*, 18 F4th 204 (6th Cir 2021)............................ 35

*Staub v Proctor Hosp*, 562 US 411 (2011)..................................................24, 25

iv

*Tennial v United Parcel Serv, Inc*, 840 F3d 292 (6th Cir 2016)............................ 18
*Texas Dept of Community Affairs v Burdine,* 450 US 248 (1983)....................14, 19
*Tysinger Police Dep't of Zanesville*, 463 F3d 569 (6th Cir 2006) ......................... 12
*Wells v New Cherokee Corp,* 58 F3d 233, 238 (6th Cir 1995),
  cert denied 452 US 938 (1981) .................................................... 22
*Willard v Huntington Ford*, 952 F3d 795 (6th Cir 2020).................................... 14
*Yazdian v ConMed Endoscopic Techs., Inc*, 793 F3d 634 (6th Cir 2015)..... 29-31, 36

## **Statutes, Court Rules, Misc.**

29 USC 623(a)(1) ........................................................... 13
29 USC 623(d) .............................................................. 35
MCL 37.2202(1)(a) ......................................................... 13
MCL 37.2701(a)............................................................. 35
M Civ JI 105.02 ........................................................... 15

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Plaintiff-Appellant requests oral argument pursuant to Federal Rule of Appellate Procedure 34(a) and Sixth Circuit Rule 34(a). This is a fact intensive employment discrimination and wrongful discharge case that presents issues of considerable significance to civil rights jurisprudence. Accordingly, Plaintiff-Appellant believes that oral argument would greatly assist the Court in reaching a fair and informed decision in this matter.

## JURISDICTIONAL STATEMENT

Plaintiff-appellant Kathleen Liebau ("Liebau") filed a Complaint in the United States District Court for the Eastern District of Michigan on August 6, 2021, asserting that her former employer Dykema Gossett, PLLC discriminated and retaliated against her in violation of the Age Discrimination in Employment Act ("ADEA"), 29 USC 621, *et seq.*, and Michigan's Elliot Larsen Civil Rights Act ("ECLRA"), MCL 37.2101, *et seq.* The District Court had federal question jurisdiction under 28 USC 1331 because Liebau's ADEA claim arose under the laws of the United States. The District Court also had supplemental jurisdiction over Liebau's state law claim under 28 USC 1367.

Appellate jurisdiction derives from 28 USC 1291 which permits appeal from the "final decisions of the district courts of the United States." The District Court disposed of this case by its Opinion and Order Granting Defendant's Motion for Summary Judgment, and Judgment, both entered March 2, 2023 (Opinion and Order, R 30, Pg ID 915; Judgment, R 31, Pg ID 947).

The Notice of Appeal was timely filed on March 30, 2023 (R 34, Notice of Appeal, Pg ID 959).

## STATEMENT OF ISSUES

I.      Do questions of fact exist precluding summary judgment on Plaintiff-Appellant's claim that Defendant-Appellee terminated her due to her age in violation of the Age Discrimination in Employment Act and Michigan's Elliot-Larsen Civil Rights Act?

II.     Do questions of fact exist precluding summary judgment on Plaintiff-Appellant's claim that Defendant-Appellee retaliated against her for complaining of age discrimination in violation of the Age Discrimination in Employment Act and Michigan's Elliot-Larsen Civil Rights Act?

## STATEMENT OF THE CASE

Plaintiff-Appellant Kathleen Liebau worked for the law firm Dykema Gossett PLLC ("Dykema") in various administrative roles for nearly ***35 years***. When Liebau turned 50, an attorney Chelsea Larsen ("Larsen"), acknowledged the birthday by covering Liebau's workstation with packages of adult diapers and fake prescription pill bottles. Larsen also replaced Liebau's office chair with a wheelchair.

For over three years, despite Liebau's repeated requests that the wheelchair be removed, it remained by her workstation to serve as a constant reminder that Larsen and other colleagues viewed Liebau as old and feeble. Eventually, Larsen became the managing attorney on a project to which Liebau was assigned, and Liebau had to report directly to Larsen. As her manager, Larsen's demonstrated age bias and age-consciousness became a constant strain on their relationship. In addition to the blatantly ageist birthday humiliations, and keeping the wheelchair by her desk, Larsen repeatedly asked Liebau when she was going to retire, treated Liebau worse than younger co-workers, and subjected her to unwarranted performance criticisms.

Liebau often complained to Larsen and others about Larsen's discriminatory treatment, and on April 30, 2019, during a meeting with Larsen and the office manager, Liebau openly pondered whether she needed to hire an

attorney. Nine days later, the law firm placed Liebau on probation and eventually fired Liebau a few months later (just shy of Liebau's 35th anniversary with the firm).

The District Court dismissed this case at summary judgment. In doing so, the Court found that Liebau established a prima facie case of age discrimination under both the ADEA and ELCRA due to Larsen's "age-mocking" behavior towards Liebau. However, the District Court determined that Liebau failed to present sufficient evidence of pretext because although Larsen's ageist comments and conduct were offensive, they could not be imputed to Dykema; the Court finding there is no issue of fact that Larsen was not the person who terminated Liebau. In reaching that conclusion, the District Court erred by resolving several questions of fact in favor of Dykema. It also erred in finding that Liebau could not establish a prima facie case of retaliation based on her age discrimination complaints.

Accordingly, Plaintiff-Appellant Kathleen Liebau respectfully requests that this Court promptly rectify the improper dismissal of this case.

## STATEMENT OF FACTS

### A.    Liebau was a loyal and dedicated employee for nearly 35 years.

Plaintiff Kathleen Liebau was born in 1965 and is 57 years old (Liebau, R 24-2, PageID 469). Dykema hired Liebau in February 1985 (*id*). Over the years

Liebau wore different hats at the firm: she was hired as a Legal Secretary, later became an Administrative Assistant, and then a Project Administrator (*id*, PageID 481-82; Email changing job title, R 24-3, PageID 608). Dykema has acknowledged throughout this litigation that Liebau even performed some paralegal duties but claims she was not a paralegal because she never formally applied for that position. However, one of Dykema's internal documents shows the firm classified her as a paralegal (Roster for Consumer Matters Team Members, R 24-4, PageID 610).

## B. Liebau received positive performance reviews from the attorneys she worked with.

Since around 2005, Liebau worked on various projects for attorney Clay Guise ("Guise") (Guise, R 24-5, PageID 620). In her 2015 performance review, Guise described Liebau as "an invaluable part of our team" and her overall work product as "excellent" (Guise 2015 performance review, R 24-6, PageID 656-57). In 2016, Guise once again described Liebau's overall work product as "excellent" and called her a "critical" member of the team (Guise 2016 performance review, R 24-7, PageID 658-59). Guise also clarified that Liebau was not an Administrative Assistant since she was performing discovery work and was communicating with outside counsel – work typically performed by paralegals (*id*). In 2017, Guise called Liebau "great" and reiterated that she was

3

an "invaluable member" of the team (Guise 2017 email to Choma, R 24-8, PageID 660).

Around September 2017, Guise assigned Liebau to work on a new team he was heading that was responsible for handling auto warranty cases (Guise, R 24-5, PageID 615-17; Liebau, R 24-2, PageID 502-03). Dykema claims in its brief that Liebau struggled with her performance on this team but her reviews from Guise and Chelsea Larsen remained strong during this period. In 2018, the last performance review Guise prepared for Liebau, Guise described Liebau's performance on the team as "generally good" in this relatively high volume, fast turnaround project (Guise 2018 performance review, R 24-9, PageID 661-62).

In 2018, Larsen provided her first performance review of Liebau in which she also described Liebau's work as "generally good" (Larsen 2018 performance review, R 24-10, PageID 663-64). Larsen went on to identify some of the challenges facing the team at the time but noted that she was "impressed by the improvements [Liebau] has made to adjust to this new environment" (*id*).

Larsen's 2019 review of Liebau, the last performance review she did shortly before Liebau's termination, contained less detail than previous reviews but stated that Liebau's overall performance met Larsen's needs (Larsen 2019 performance review, R 24-11, PageID 665).

4

**C.    Dykema throws Liebau a 50ᵗʰ birthday "party" filled with ageist tropes and stereotypes.**

In October 2015, before Liebau was assigned to work on a team managed by Larsen, Larsen and other co-workers organized a 50ᵗʰ birthday "party" for Liebau and decorated Liebau's desk with adult diapers, fake prescription pill bottles, and a wheelchair (Liebau, R 24-2, PageID 485-86; Larsen, R 24-12, PageID 689). Larsen borrowed the wheelchair from her church, specifically for Liebau's birthday (Larsen, R 24-12, PageID 690). At that time, Larsen and Liebau had never worked directly together (Liebau Decl, R 24-13, PageID 711). Either during the "party," or shortly thereafter, Larsen asked Liebau if she was going to retire now that she was 50 and expressed surprise when Liebau told her she had no plans to retire (Liebau, R 24-2, PageID 487-488). On the day of the "party," Liebau packed up the offensive decorations, placed them on top of the wheelchair, and wheeled them into Larsen's office (*id*). When Liebau returned the next work day, the wheelchair was back at Liebau's desk (*id*).

**D.    Larsen's refusal to move the wheelchair served to further demean and embarrass Liebau.**

Liebau repeatedly requested Larsen move the wheelchair but Larsen refused to move it (*id*, PageID 488-90). It remained for so long next to Liebau's workstation that other employees – including the office manager, assumed the wheelchair was Liebau's (*id*, PageID 490, 567, 572). In fact, other employees

thought something was wrong with Liebau and asked her why she needed a wheelchair (*id*, PageID 489, 571). Co-workers even told Liebau that they too would not have wanted the wheelchair next to their workstations because "it makes you look old or something's wrong with you" (*id*). Several co-workers even told Liebau that they were embarrassed for Liebau to have the wheelchair by her workstation and that they felt Larsen's behavior was inappropriate (Liebau Decl, R 24-13, PageID 711).

### E.    As her manager, Larsen is openly hostile to Liebau from day one.

After Liebau requested Larsen move the wheelchair from her desk, Larsen's attitude towards Liebau changed and Larsen stopped acting like Liebau's friend (Liebau, R 24-2, PageID 491-93). In fall 2017, when Larsen learned that Liebau had been assigned to a team Larsen was going to be managing, Larsen replied "Really?" and her facial expression and body language suggested she was upset Liebau would be working with her (*id*, PageID 491; Liebau Decl, R 24-13, PageID 711).

As her manager, Larsen repeatedly asked Liebau when she was going to retire (Liebau, R 24-2, PageID 487-88, 499-500). The tone in Larsen's voice and her body language suggested she was upset that Liebau was not retiring (*id*; Liebau Decl, R 24-13, PageID 711). Larsen never asked Robin Kowalski, the younger paralegal on their team, if she was going to retire (Liebau, R 24-2,

PageID 499). After Liebau said she had no desire to retire, Larsen excluded Liebau from important team meetings and kept Liebau out of the loop on issues pertinent to Liebau's job (Liebau R 24-2, PageID 491-93, 497-98). For instance, at the start of the project, the partner in charge, Clay Guise, directed that Larsen obtain the required credentials so Liebau could access client systems necessary to perform her work (*id*, PageID 491-92). However, for months Larsen refused to provide Liebau with this access despite repeated requests from Liebau. *Id.*

Larsen also treated Liebau worse than the younger paralegal on the team. Larsen reported to Guise that Liebau was "slow"; however, Liebau completed more work in a shorter amount of time than any of the paralegals on the team (*id*, PageID 534, 540-42).

**F.    When Liebau refuses to retire and threatens to take legal action, Larsen and Choma paper Liebau's file with bogus performance write-ups.**

Dykema argues that Office Manager Sue Choma ("Choma") was Liebau's direct supervisor. Choma was Liebau's supervisor on paper but had very little knowledge of Liebau's day-to-day work (Liebau, R 24-2, PageID 479, 549; Choma, R 24-14, PageID 728). Dykema even admits that Liebau was managed day-to-day by Larsen (Dykema's Interrogatory Answers, R 24-15, PageID 765). However, just like Guise and Larsen, Choma also prepared an annual performance evaluation for Liebau. In April 2019, just four months before

Liebau's termination, Choma found that Liebau met or exceeded expectations in all performance areas, and that Liebau's attendance and punctuality were "satisfactory" (Choma 2019 performance review, R 24-16, PageID 778).

On April 30, 2019, Larsen's discrimination of Liebau came to a head: during a discussion, Liebau confronted Larsen about her age bias and openly pondered whether she needed to get an attorney (Liebau Decl, R 24-13, PageID 712 ¶9). This is corroborated by Choma's meeting notes in which she recounts being told by Larsen the next day that Liebau might be getting an attorney (Choma meeting notes, R 24-17, PageID 780). When Larsen asked Liebau why she believed she was being discriminated against, Liebau gave her examples of how Larsen treated Kowalski better than she, falsely told co-workers Liebau was "slow," and teased Liebau about having to wear reading glasses (Liebau Decl, R 24-13, PageID 712 ¶10).

Also on April 30, Larsen emailed Liebau and other team members a request to begin case evaluations; Liebau responded with questions about how to prioritize the work; Larsen never responded (Larsen, R 24-12, PageID 676-77). Instead, Larsen forwarded the incomplete email exchange to Choma that misrepresented the reasons Liebau had not completed the assignment and inaccurately portrayed what had actually transpired (*id*; Larsen email to Choma May 6, R 24-18, PageID 784-85).

Several days later, on May 9, 2019, Choma placed Liebau on a 90-day probation, based on false information provided to Choma by Larsen (May 9 memo, R 24-19, PageID 786). Liebau explained to Choma that Larsen had not given her a true story and even printed email exchanges between Liebau and Larsen to prove Liebau was telling the truth (Liebau Decl, R 24-13, PageID 712 ¶12). Choma refused to consider Liebau's evidence (*id*). Liebau then alerted Guise that Larsen was subjecting her to a hostile work environment and Guise passed that information along to Choma (Guise May 16 email, R 24-20, PageID 787). Larsen also reported Liebau's age complaints to Guise (Larsen, R 24-12, PageID 683).

On June 18, 2019, Liebau met with Larsen and Choma and specifically told them that if they did not permanently remove the wheelchair, Liebau would file an age discrimination suit (Liebau, R 24-2, PageID 489). On July 1, 2019, Liebau asked Choma to conduct an independent investigation into age discrimination Liebau was experiencing at the hands of Larsen but Choma refused (Liebau Decl, R 24-13, PageID 712 ¶13; Choma meeting notes, R 24-17, PageID 782).

### G.    Dykema terminates Liebau.

On August 23, 2019, just shy of Liebau's 35th anniversary with the firm, Dykema fired Liebau purportedly for failing to "maintain professional and

respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement" (Termination letter, R 20-21, PageID 408-09). However, the partner in charge of the project, Clay Guise, struggled to identify any behaviors he observed that would have justified Liebau's termination (Guise, R 24-5, PageID 629). Likewise, Larsen, who interacted most regularly with Liebau, was not aware of any instances over the last two years of Liebau's employment in which Liebau acted unprofessionally (Larsen R 24-12, PageID 675).

## SUMMARY OF ARGUMENT

Plaintiff-Appellant Kathleen Liebau has presented ample evidence that her age, and her complaints of age discrimination, resulted in her being placed on probation and subsequently terminated after nearly 35 years of service.

The District Court properly found that Liebau had established a prima facie case of age discrimination but erred in finding that no reasonable jury could conclude that Dykema's purported reason for firing Liebau -- alleged and vague behavioral and performance issues – was a pretext for discrimination. Even though the District Court determined that Larsen's "age-mocking birthday decorations and her repeated comments about Liebau's retirement support an inference of discrimination," it went on to hold that the supervisor's age bias could not be imputed to Dykema by finding no issue of fact regarding Larsen's

10

influence on Liebau's termination. This holding misconstrues the evidence in the case and the law on imputed liability.

As an initial matter, despite her 35-year career at Dykema, these alleged performance and behavior issues that Dykema now claims resulted in Liebau's termination only began occurring once Liebau became supervised by Chelsea Larsen – the attorney who had previously mocked Liebau's age and repeatedly questioned Liebau about her retirement. This alone is compelling evidence that the alleged behavioral issues are pretextual, and at a minimum are an issue for a jury to determine.

There is also a question of fact as to whether Larsen was actually a decisionmaker notwithstanding Larsen's protestations to the contrary. In fact, Larsen even testified that she was considering whether or not she should fire Liebau, which strongly suggests she had that authority. Furthermore, even if Larsen was not a decisionmaker, Dykema can still be found liable under the "Cat's Paw" theory because it is undisputed that Larsen (who possessed the age bias) had significant influence over Liebau's probation and termination.

Liebau has also presented sufficient evidence to cast doubt on a number of Dykema's purported reasons for placing her on probation and subsequently terminating her. The District Court erred by not viewing Liebau's evidence in a light most favorable to her and in not finding questions of fact regarding whether those were the real reasons for her termination.

With respect to Liebau's retaliation claim, the District Court erred in concluding that Liebau did not engage in protected activity on April 30, 2019 (nine days before Dykema placed her on probation), when she told Larsen and Choma she needed an attorney to protect her rights. The District Court failed to consider the context in which Liebau made the statement, and the fact that for months prior, Liebau had been complaining of the wheelchair Larsen had placed by her workstation, and the effect it was having on how co-workers viewed her. Most importantly, Larsen understood Liebau's attorney comment as tied to her age discrimination complaints and was so alarmed by Liebau's accusation that she forwarded it to the partner-in-charge, Clay Guise. Guise, in turn, raised Liebau's complaints to Choma, and Liebau's request for an investigation into the discrimination fell on deaf ears.

This Court should reverse the dismissal of this case at summary judgment because the overwhelming evidence creates, at a minimum, questions of fact to be submitted to a jury.

## ARGUMENT

## I.   Standard of Review.

This Court reviews an order granting summary judgment *de novo. Tysinger Police Dep't of Zanesville*, 463 F3d 569, 572 (6th Cir 2006).

In assessing whether summary judgment is appropriate, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in her favor. *Anderson v Liberty Lobby, Inc,* 477 US 242, 251-52 (1986). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* "Credibility determinations, the weighing of the evidence and the drafting of legitimate inferences from the facts are jury functions, not those of a judge...." *Id* at 255.

## II.    Age Discrimination under the ADEA and ELCRA.

The Age Discrimination in Employment Act, 29 USC 623(a), *et seq.* ("ADEA") makes it "unlawful for an employer … to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 USC 623(a)(1).

Likewise, Michigan's Elliot-Larsen Civil Rights Act, provides that an employer shall not "[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of … age …." MCL 37.2202(1)(a).

A plaintiff can prove discrimination under the ADEA and ELCRA inferentially using the burden shifting framework first set forth in *McDonnell-Douglas. See Kline v Tennessee Valley Auth*, 128 F3d 337, 348 (6th Cir 1997).

In order to establish a prima facie case of an ADEA claim using circumstantial evidence under the *McDonnell Douglas* framework, a plaintiff must show that: (1) she is a member of the protected class (at least forty years of age); (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) there exist "circumstances which support an inference of discrimination." *Willard v Huntington Ford*, 952 F3d 795, 808 (6th Cir 2020).

Once a plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the its action. *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 142 (2000). If the employer does so, the burden shifts back to the plaintiff to present evidence the employer's articulated reason is pretextual. *Texas Dept of Community Affairs v Burdine,* 450 US 248, 252-53 (1983); *Reeves,* 530 US at 135 (a prima facie case, combined with sufficient evidence that the employer's asserted justification is false, permits a fact finder to conclude that the employer unlawfully discriminated against the employee).

Similarly, under state law, a plaintiff establishes a prima facie case with evidence that she: 1) belongs to a protected class, 2) suffered an adverse

employment action, 3) was qualified for the position, and 4) the adverse action occurred under circumstances giving rise to an inference of unlawful discrimination. *Debrow v Century 21 Great Lakes, Inc*, 463 Mich 534, n 8 (2001); *Hazle v Ford Motor Co,* 464 Mich 456, 466 (2001) ("[age] does not have to be the only reason, or even the main reason, but it does have to be one of the reasons which made a difference…") citing M Civ JI 105.02.

The prima facie case is not meant to be an onerous burden, and the amount of evidence a plaintiff must produce on the elements is not extensive. *Cline v Catholic Diocese of Toledo*, 206 F3d 651, 660 (6th Cir 2000). Additionally, "to survive summary judgment a plaintiff need only produce enough evidence to support a prima facie case and to rebut, but not to disprove, the defendant's proffered rationale." *Griffin v Finkbeiner*, 689 F3d 584, 593 (6th Cir 2012) (internal quotation omitted).

### A.    The District Court correctly found that plaintiff established a prima facie case of discrimination.

At summary judgment, Dykema argued Liebau could not satisfy the fourth prong of the prima facie case by arguing that she was not replaced by someone younger, or treated less favorably than similarly-situated employees. However, the District Court correctly held that replacement by a younger employee, or comparisons vis-à-vis a comparator, are but two context dependent ways to demonstrate a prima facie case. See *Blair v Henry Filters, Inc*, 505 F3d

15

517, 530 (6th Cir 2007) (recognizing many instances in which courts have found discriminatory remarks or actions can support an "inference of discrimination") overruled on other grounds by *Gross v FBL Financial Services, Inc*, 557 US 167 (2009).

Here, the record is replete with examples of Larsen's treatment of Liebau that support an inference of discrimination. For instance, Larsen called Liebau out when Liebau turned 50 in a manner that was unambiguously ageist and discriminatory. Larsen expressed disappointment in having to work with Liebau even though they had never had any problems before, and Larsen had no reason not to want to work with Liebau. Larsen refused Liebau's repeated requests to move the wheelchair, as its presence next to Liebau's workstation is clearly associated with ageist stereotypes.

In an aging workforce, it is unclear why the age of 50 would cause such a strong reaction from Larsen. But for whatever reason, as soon as Liebau turned 50, Larsen's attitude of her changed. The jury should hear Larsen's explanations.

And finally, when Liebau confronted Larsen about her age discrimination and mentioned getting an attorney, Larsen's treatment of her got worse. Nine days later, Dykema placed Liebau on probation based on false allegations made by Larsen, and three months later Dykema fired Liebau – just shy of her 35th year work anniversary.

Based on this evidence, the District Court correctly held that "Larsen's age-mocking birthday decorations and her repeated comments about Liebau's retirement support an inference of discrimination sufficient to satisfy the lenient *prima facie* burden" (Opinion, R 30, PageID 934).

The blatantly ageist treatment Liebau experienced at the hands of her supervisor should be all the evidence Liebau needs to meet the relatively low burden of establishing a prima facie case. Thus, any further analysis of the prima facie standard is likely superfluous. However, even assuming more evidence is necessary to satisfy the fourth prong of a prima facie case, Liebau has presented additional evidence showing how Larsen treated Liebau's co-worker, Robin Kowalski, better than she treated Liebau.

In its opinion, the District Court found that Kowalski is not a proper comparator because Kowalski was a paralegal, whereas Liebau was an Administrative Assistant; and Kowalski purportedly had a different supervisor (*id*, PageID 931). However, not only did Liebau and Kowalski work on the same team managed day-to-day by Larsen, the team roster identifies both Liebau and Kowalski as paralegals (Roster, R 24-4, PageID 610). The roster also confirms they performed identical tasks (i.e., "case assessment and tracking") (*id*). Guise even admitted that he would have given Liebau and Kowalski "the same job description" (Guise R 24-5, PageID 619). At the very least, a question of fact

exists as to whether Liebau and Kowalski were similarly situated for purposes of a establishing the fourth prong of a prima facie case. *Tennial v United Parcel Serv, Inc*, 840 F3d 292, 304 (6th Cir 2016) ("employee need not be identical in every way in order to be a proper comparator"); *Mitchell v Toledo Hosp,* 964 F2d 577, 583 (6th Cir 1992) (employees are comparable when they "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct …").

Thus, Liebau has sufficiently established a prima facie case of discrimination.

### B.    Liebau has sufficient evidence of pretext.

Although the District Court properly concluded that Liebau established a prima facie case of age discrimination, the District Court erred in concluding that Liebau failed to raise a triable issue of fact as to whether Dykema's purported reasons for terminating Liebau were pretextual.

Once a plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the its action. *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 142 (2000). If the employer does so, the burden shifts back to the plaintiff to present evidence the employer's articulated reason is pretextual. *Texas Dept of Community Affairs v Burdine,* 450 US 248, 252-53 (1983).

### 1.    Larsen's age-bias can be imputed to Dykema.

Although the District Court found that Larsen's behavior suggested age-based animus towards Liebau, it held that while "Larsen *influenced* Liebau's termination by reporting her performance problems to the office manager," Larsen's bias cannot be imputed to Dykema because Larsen "was not consulted and did not recommend Liebau's termination" (Opinion, R 30, PageID 938-39) (emphasis added). However, in reaching that conclusion, the Court improperly resolved questions of fact concerning Larsen's actual role in the termination process.

For example, while Larsen claims she was not consulted on Liebau's termination, Larsen also testified as follows: "I don't know whether *I was considering whether to terminate her* or not, rather than should we continue having her work on this project ..." (Larsen, R 24-12, PageID 687-88) (emphasis added). Larsen's reference to herself as having the power to terminate at the very least raises a question of fact as to true role she played in Liebau's firing. Thus, a reasonable jury could find that Larsen was actually a decisionmaker concerning Liebau's termination. At the very least, Larsen wielded significant influence over Choma such that her age bias could be imputed to Dykema.

Even though Choma claims she made the decision to terminate Liebau without consulting Larsen, the record is replete with examples of Larsen's

comments concerning Liebau's performance influencing Choma's decisions. For example, Choma admits that information she received directly from Larsen was incorporated into Liebau's reviews (Choma, R 24-14, Pg ID 728). Moreover, Larsen even admits to forwarding negative information about Liebau to Choma because in her eyes it was important for Choma to be aware of "friction" (Larsen, R 24-12, Pg ID 675). In fact, Larsen's influence over Choma was so strong that when Liebau attempted to explain to Choma that the information Choma had received from Larsen was inaccurate, Choma refused to listen to her, or to even view Liebau's exonerating evidence (Liebau Decl, R 24-13, PageID 712 ¶12).

During the last year of Liebau's employment, Choma admits she only personally observed Liebau's work "very few times" (Choma, R 24-14, PageID 720-21). Thus, since Choma had practically no first-hand knowledge of Liebau's day-to-day performance, all the information influencing her decisions concerning Liebau came from Larsen.

There is yet another reason to doubt Choma's assertion that Larsen played no role in the decision to terminate Liebau. In light of Liebau's job duties, which were to provide support services for an important client project, it is simply not fathomable that an office manager of a large law firm would make personnel decisions that affect attorneys and their work product without at least getting the attorneys' approval. Imagine an attorney showing up for work one day to find

out that her longtime assistant was terminated by the office manager for alleged performance reasons and nobody asked for the attorney's approval. Such a scenario is hard to comprehend, and reason to further question Choma's account of how Liebau's termination took place. Since a reasonable juror could find that Larsen, at the very least, played a role in the decision to terminate Liebau, the District Court erred in concluding Larsen's bias could not be imputed to Dykema.

Although the District Court found Liebau had presented compelling evidence of Larsen's age bias, the District Court, citing *EEOC v Ford*, 782 F3d 753 (6th Cir 2015), held that Larsen was too far removed from the termination process such that her animus could not be imputed on Dykema. However, as explained above, Larsen's role in Liebau's termination was significantly more than the supervisor's role in *Ford*.

In *Ford*, the allegedly biased supervisor with no decision-making authority had one-on-one meetings with the employee to discuss performance issues. *Id* at 768 ("meetings involved only Gordon, a *non* decisionmaker … [w]hen Ford decided to terminate Harris, Gordon was *on vacation* … [a]nd critically (and undisputedly), no one at Ford consulted with him or received a recommendation from him before making its termination decision"). The same cannot be said of Larsen in this case. During the meetings to discuss Liebau's alleged performance

issues and her probation, Larsen was not only present but was actively participating in those discussions.

When considering pretext, courts must consider statements made by those "who are in fact meaningfully involved in the decision to terminate an employee." See *Wells v New Cherokee Corp,* 58 F3d 233, 238 (6th Cir 1995), cert denied 452 US 938 (1981). Furthermore, "discriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Bledsoe v Tennessee Valley Auth Bd of Directors*, 42 F4th 568, 581 (6th Cir 2022)) citing *Risch v Royal Oak Police Dep't*, 581 F3d 383, 393 (6th Cir 2009).

Thus, since Liebau has raised sufficient questions of fact concerning Larsen's role in her termination, the District Court erred in concluding that Larsen's age bias could not be imputed to Dykema. In light of Larsen's ageist conduct, the District Court also erred in finding that Liebau had not set forth sufficient evidence of pretext.

### 2. Dykema is also liable under the Cat's Paw theory.

Even assuming Larsen was not a decisionmaker in the termination, the District Court also erred in finding that Dykema could not be found liable under the Cat's Paw theory.

The term "cat's paw" refers to one used by another to accomplish his purposes, *Marshall v The Rawlings Company,* 854 F3d 368, 377 (6th Cir 2017). In

the employment discrimination context, "Cat's Paw" refers to a situation in which an individual who lacks ultimate decision-making power (here, allegedly Larsen) uses the formal decisionmaker (Choma) as a dupe in a scheme to trigger a discriminatory employment action. *Id; Ford*, 782 F3d at 768 (Cat's Paw holds the employer liable if its agent, "motivated by retaliatory animus, intended to cause [employee]'s termination and proximately caused the actual decisionmakers to terminate her").

*Marshall* goes on to explain that, "[t]he primary rationale for the cat's paw theory of liability is that, because a company's organizational chart does not always accurately reflect its decisionmaking process, an employee of lower rank may have significant influence over the decisionmaker…The ultimate decisionmaker may be detached from day-to-day operations, and consequently apt to defer to the judgment of the [person] on the spot and at risk of being the conduit of [the lower-level decisionmaker's] prejudice." *Marshall*, 854 F3d at 378.

In *EEOC v New Breed Logistics*, 783 F3d 1057, 1069 (6th Cir 2015), the Sixth Circuit affirmed a jury's finding of liability as against an employer under this theory:

> Under the cat's paw theory of liability, we focus on whether an individual and not the actual decision-maker 'is the driving force behind the employment action.' Thus, when a decisionmaker acts in accordance with a [discriminator's] bias without herself

evaluating the employee's situation, the [discriminator] clearly causes the tangible employment action, regardless of which individual actually enforces the adverse transfer or termination. Applying liability in this circumstance accords with agency principles in that 'the [discriminator] is the decisionmaker and the titular decisionmaker is a mere conduit for the [discriminator's] … animus.

*Id* at 1069 (internal citations omitted).

Here, the District Court improperly held that Larsen's discriminatory animus could not be imputed to Choma under the Cat's Paw theory because Larsen purportedly never explicitly recommended Liebau be fired. However, there is no requirement in the case law that a direct supervisor actually ***recommend*** the plaintiff be fired. All that is required is that the direct supervisor ***influenced*** the final decisionmaker by imparting information or knowledge the decisionmaker used to terminate the employee. *Madden v Chattanooga City Wide Serv Dept*, 549 F3d 666, 677-78 (6th Cir 2008) (Cat's Paw liability exists when the termination decision results from an investigation that was tainted by a "discriminatory information flow").

To the be clear, the question for Cat's Paw is whether the supervisor, through his or her actions, ***intended*** to cause the adverse employment action, not whether the supervisor made a specific recommendation concerning the action. *DeNoma v Hamilton Cnty Court of Common Pleas*, 626 F Appx 101, 106 (6th Cir 2015) citing *Staub v Proctor Hosp*, 562 US 411, 422 (2011). There is no

requirement a supervisor use the magic words "I recommend [plaintiff] be fired" in order for Cat's Paw to apply. Additionally, "[w]hen a decisionmaker relies on a biased employee's knowledge about the employee subject to an adverse action, *a jury may reasonably infer that the biased employee proximately caused the adverse action*." *Bledsoe*, 42 F4th at 582 (emphasis added).

Here, the record contains evidence that Larsen harbored age-based animus towards Liebau. Additionally, it is undisputed that Larsen repeatedly supplied Choma with complaints and negative reviews of Liebau's performance, and that Choma relied on those complaints and reviews to fire Liebau. Larsen also admits that she gave Choma negative information about Liebau. Thus, even though Larsen may have never specifically recommended Choma fire Larsen, the jury may reasonably infer that Larsen proximately caused Liebau's termination. *Id*; see also *Staub v Proctor Hosp*, 562 US 411, 422 (2011) ("if a supervisor performs an act motivated by [discriminatory] animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable").

### 3.    A jury could reject Dykema's purported reasons for firing Liebau.

Even assuming Liebau needs more evidence to show pretext, Liebau has raised a triable issue of fact as to whether any of Dykema's purported reasons

for firing Liebau were true and/or whether they actually motivated Dykema's actions.

A prima facie case, combined with sufficient evidence that the employer's asserted justification is false, permits a fact finder to conclude that the employer unlawfully discriminated against the employee. *Reeves,* 530 US at 135.

"The law allows a factfinder to infer intentional discrimination from proof of the prima facie case coupled with a disbelief of the proffered reason for the employer's action." *EEOC v Yenkin-Majestic Paint Corp*, 112 F3d 831,835 (6th Cir 1997). A plaintiff can refute her employer's reason for termination "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v AB Dick Co,* 231 F3d 1016, 1021 (6th Cir 2000). Ultimately, pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v Dow Chem Co,* 580 F3d 394, 400, n 4 (6th Cir 2009). If plaintiff "produced evidence from which a jury could doubt the employer's explanation," there is evidence "sufficient to support an inference of discrimination at trial." *Id* (citing *Hicks*, 409 US at 515).

Specifically, Dykema claims it fired Liebau because she purportedly failed to "maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement"

(Termination letter, R 20-21, PageID 408-09). When evaluating these alleged infractions, one must not ignore that Liebau was a nearly 35-year employee at Dykema. It is certainly reasonable for a jury to infer that Liebau would not have lasted over three decades at this large law firm had she not been, at a minimum, competent and professional.

When a long-term employee like Liebau suddenly has a drop in performance, that can be evidence of pretext. *Ross v Campbell Soup Co*, 237 F3d 701 (6th Cir 2001); see also *Cazzola v Codman and Shurtleff Inc*, 751 F2d 53 (1st Cir 1984) (negative evaluations after years of good performance often indicates discrimination). Interestingly, Dykema provides no explanation for why after nearly 35 years Liebau suddenly developed behavioral and performance issues severe enough to warrant termination. However, a jury could easily connect the dots and find that these purported performance issues only began occurring ***after*** Liebau was assigned to work for Larsen – who had previously mocked Liebau's age and repeatedly questioned her about retirement. That should be all the pretext evidence Liebau needs to survive summary judgment. Nevertheless, Liebau has presented evidence calling into question each of Dykema's alleged reasons for firing her.

**False Reason #1:**  Liebau was unprofessional and disrespectful.

As an initial matter, all the attorneys who managed Liebau on a daily basis and who had the most interaction with her never observed Liebau behaving in an unprofessional or disrespectful manner (Larsen, R 24-12, PageID 674-75; Guise, R 24-5, PageID 635).

One of the examples Dykema uses to support its argument that Liebau was unprofessional was a meeting that took place in June 2019 in which Choma found Liebau's demeaner during the meeting to be unprofessional. However, Liebau has raised sufficient questions of fact to dispute this. For instance, Larsen (who was present at the meeting) admits that she did not find anything Liebau said to be offensive and that she even understood Liebau's demeaner as being Liebau's "informal way of talking" (Larsen, R 24-12, PageID 682). Larsen also denies that Liebau ever mocked her or intended to be disrespectful towards her (*id*, PageID 683-84).

The District Court found the fact that Larsen, who was purportedly the target of the alleged mockery, was not insulted or offended "does not render her supervisor's assessment of it as unprofessional and disrespectful false" (Opinion, R30, PageID 936). True, it may not render it false as a matter of law but it also does not render it true as matter of law. Liebau has denied she mocked or disrespected anyone and Larsen confirms that not only was she not offended by Liebau's conduct, she also understood Liebau's behavior as being consistent with Liebau's manner of communication. Rather than accepting as true

28

Choma's interpretation of Liebau's behavior, Larsen's admission should instead create a question of fact as to whether Liebau's behavior was actually insulting or otherwise inconsistent with how she typically communicates in the workplace. *Yazdian v ConMed Endoscopic Techs., Inc*, 793 F3d 634, 648-49 (6th Cir 2015) (subjective assessments of an employee's behavior such as "tone" and "communication style" are questions for the jury).

Although employers are free to make employment decisions based on subjective criteria such as an employee's tone or demeaner "any procedure employing such subjective evaluations will be ***carefully scrutinized*** in order to prevent abuse." *Rowe v Cleveland Pneumatic Co, Numerical Control, Inc*, 690 F2d 88, 93 (6th Cir 1982).

At the very least, Dykema's decision to terminate a nearly 35-year employee based on one supervisor's assessment of Liebau's "tone" at a meeting, deserves to be carefully scrutinized. This is especially true in light of Larsen's admission that she understood what Liebau said (and how she said it) as being consistent with how Liebau generally communicates – as she has done for over three decades. Thus, a reasonable juror could find that Choma's characterization of Liebau's conduct at the June 2019 meeting was inaccurate, pretextual, or at the very least insufficient to warrant the kind of discipline Liebau received. Either way, questions of fact exist for a jury.

Moreover, even assuming Liebau's "tone" at the meeting was inappropriate, courts have excused such behavior when exhibited in response to blatant discrimination. *Yazdian* 793 F3d at 651-52 (finding a question of fact as to whether the employer's claim that it terminated the employee due to "behavioral" issues is pretextual); see also *NLRB v Southwestern Bell Telephone Co,* 694 F2d 974, 978 (5th Cir 1982) ("an employer may not rely on employee conduct that it has unlawfully provoked as a basis for disciplining an employee"); *NLRB v Steiner Film, Inc,* 669 F2d 845, 851-52 (1st Cir 1982) (ordering reinstatement of employee discharged for intemperate reaction to employer's unlawful behavior)

In *Hertz v Luzenac America*, 370 F3d 1014, 1021-22 (10th Cir 2004), an employee who believed his supervisor was discriminating against him was fired for yelling loudly at that supervisor in the presence of other employees. The court held that the employee's emotional outburst, even if unprofessional and insubordinate, was justified as "a most natural human reaction" to the discrimination. *Id* at 1022.

Here, at same meeting in which Liebau is accused of inappropriate behavior, both Larsen and Choma acknowledge Liebau had also complained of age discrimination (Larsen, R 24-12, PageID 682; Choma, R 24-14, PageID 733). Therefore, even assuming Liebau's "tone" was less than professional, it

was excusable in light of the ongoing discussion Liebau and Choma were having concerning age discrimination and Liebau's obvious frustration that despite multiple complaints, Larsen's biased treatment of her had not improved. *Yazdian* 793 F3d at 651-52.

Moreover, while Choma was quick to document Liebau's alleged inappropriate behavior at the June 2019 meeting, her subsequent July 1 memo made absolutely no reference to the serious allegations of discrimination Liebau had made at that same meeting. Rather than counter Liebau's allegations, Choma's report was silent. A reasonable juror could find that Choma's failure to document Liebau's discrimination complaint suggests Choma was either complicit in the discrimination, or her account of what actually happened at that meeting is inaccurate.

Accordingly, Liebau has set forth sufficient evidence by which a jury could reject Dykema's proffered reason that it terminated Liebau for her alleged disrespectful behavior.

**False Reason #2:**        Liebau failed to comply with firm policies and procedures.

In addition to raising a question of fact concerning her behavior at the June 2019 meeting, Liebau has also raised sufficient doubt concerning the allegation she has not followed policies.

As an initial matter, Dykema is not particularly clear which firm policies and procedures Liebau allegedly failed to comply with over her extensive career that justified her termination. In support of its summary judgment motion, Dykema submitted a memo from Choma dated February 5, 2018, that referenced Liebau's purported unauthorized use of overtime, unauthorized work from home, and tardiness (Feb 2018 Memo, R 20-13, PageID 385-86). However, since these alleged infractions occurred over a year and a half before Liebau's termination, a reasonable juror could conclude they were too remote to have actually influenced Dykema's decision to terminate Liebau. By contrast, Choma's most recent performance review of Liebau – completed just four months before Liebau's termination – states that Liebau's attendance and punctuality was "satisfactory" (Choma 2019 performance review, R 24-16, PageID 778). The review also states that while Liebau allegedly had some timekeeping issues in 2018, those had been resolved (*id*). Thus, there is, at minimum, a question of fact as to whether Liebau had any time or attendance issues.

Additionally, neither Choma's May 9 or July 1 memoranda, which Dykema also claims served as the basis for Liebau's termination, make any reference to timekeeping or attendance. Moreover, Dykema claims Liebau was an Administrative Assistant (not a paralegal) and nothing in the Administrative Assistant job description requires that Administrative Assistants bill time to

clients (Job Description, R 24-23, PageID 793-95). This casts even further doubt on whether Liebau had such transgressions.

With respect to the other issues raised in Choma's July 18, 2019 email, Liebau has sufficiently refuted those allegations as well through her deposition testimony and sworn declaration (Liebau Decl, R 24-13, PageID 710-14, ¶¶ 14-20; Liebau, R 24-2, PageID 552-53). However, Liebau is not required to refute every single alleged reason for her termination to defeat summary judgment. When a plaintiff raises doubt as to some (but not all) of an employer's alleged reasons for termination, summary judgment is inappropriate. *Fuentes v Perski*, 32 F3d 759, 764-765 n 7 (3d Cir 1994) ("[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast doubt on a fair number of them, the plaintiff may not need to discredit the remainder"). In other words, if a jury finds just one of Dykema's stated reasons for termination to be incredible, a rational mind can disbelieve the remaining reasons. *Id* at 765; *Norfolk & W Ry Co v McKenzie*, 116 F2d 632, 635 (6th Cir 1941) ("*falsus in uno, falsus in omnibus*, … The jury may disregard the evidence altogether and should do so if the witness has willfully sworn falsely to a material fact").

Thus, since Liebau has, at a minimum, cast doubt as to several of Dykema's alleged reasons for terminating her, summary judgment should be

denied and a jury should determine whether Dykema truly terminated Liebau for the reasons it claims.

Viewing the evidence in the light most favorable to Liebau, Liebau has set forth sufficient evidence by which a jury could conclude these alleged infractions did not actually motivate Dykema or terminate her or were too insignificant to warrant termination.

**False Reason #3:**        Liebau   failed   to   make   performance improvements.

Dykema cites several alleged performance issues that took place over the last few months of Liebau's employment to try to make the case that Liebau was a bad employee. However, every annual performance review states that Liebau was meeting expectations or better. Larsen even admits she is not aware of anything Liebau did that rose to the level of a terminable offense (Larsen, R 24-12, PageID 675). Larsen did acknowledge that while there was some "friction" between them, overall Liebau's "performance was really good" (*id*, PageID 681). In fact, to this day, the only reason Larsen would not work with Liebau in the future was because Liebau has accused her of dishonesty – not because of anything having to do with Liebau's job performance (*id*, PageID 688). Thus, since Liebau's direct supervisor cannot identify any performance deficiencies significant enough to warrant dismissal, a reasonable jury could conclude that

none of the performance issues Dykema's cite could have possibly been a factor in Liebau's termination.

As explained above, Liebau has cast sufficient doubt on whether these were the true reasons for her termination. Thus, this Court should deny summary judgment.

## III.    Retaliation under the ADEA and ELCRA.

The District Court also erred in granting Dykema summary judgment on Liebau's retaliation claim.

Both the ADEA and ELCRA prohibit employers from retaliating against employees who report age discrimination. See 29 USC 623(d); MCL 37.2701(a). When analyzing retaliation claims, courts apply the same three-step *McDonnell-Douglas* framework used to analyze discrimination claims. *Sloat v Hewlett-Packard Enter Co*, 18 F4th 204, 213 (6th Cir 2021). However, the question now is whether a jury could find the employer terminated the plaintiff because of her complaints about age discrimination, rather than because of age discrimination itself. *Id.*

Prior to her termination, Liebau had made several complaints of age discrimination leading up to her termination. On April 30, 2019 (a mere 9 days before Dykema placed her on probation), Liebau complained to Larsen and Choma she was being discriminated against due to her age and might need an attorney. Although Dykema argued at summary judgment that Liebau's

declaration testimony concerning this complaint contradicted her deposition testimony, Choma's own notes from April 30 confirm, at the very least, that Liebau expressed concern about being fired and needing an attorney.

The District Court held that Liebau's comments to Choma during that meeting "do not constitute an overt stand against suspected illegal discriminatory conduct and thus cannot be deemed a protected activity" (Opinion, R 30, PageID 944). While vague complaints of discrimination do not constitute protected activity, a plaintiff is not required to lodge a complaint with "absolute formality, clarity, or precision." *Yazdian,* 793 F3d at 645. Rather than view each alleged statement in a vacuum, courts must consider the context in which the statements were made. *Id* (finding the statements "I'm going to respond with counsel" "I will have an attorney respond" "I will be responding with charges" taken together constituted protected activity); see also *Minevich v Spectrum Health-Meier Heart Ctr*, 1 F Supp 3d 790, 804 (WD Mich, 2014) ("an employee does not have to use legal jargon when opposing discrimination: the court will find opposing activity if the employee's comments, when read in their totality, oppose discrimination") (internal quotations omitted).

For months leading up to her April 30 comment about needing a lawyer, Liebau had repeatedly complained about the wheelchair by her workstation. Even if Liebau's complaints about the wheelchair did not explicitly mention age

discrimination, it does not take much inference to understand what Liebau was actually complaining about. The whole reason the wheelchair was by her work station in the first place was to mock Liebau's turning 50, and to remind Liebau that her co-workers viewed her as being old.

Since plaintiffs are not required to use any magic words when making a complaint of discrimination, the issue is not what specific words the employee said but whether the employer should have reasonably understood those words as making a complaint of unlawful discrimination. *Braun v Ultimate Jetcharters, LLC*, 828 F3d 501, 512 (6th Cir 2016).

Critically, Larsen even acknowledges that she understood Liebau's comment about needing an attorney as tied to Liebau's ongoing discrimination complaints, and was so concerned about it that she forwarded her concerns to Clay Guise, the partner-in-charge.

| | |
|---|---|
| 13 | Q.  Did you tell Clay about Kathy's allegations of |
| 14 | discrimination? |
| 15 | A.  At one time, and I don't remember, it would not have |
| 16 | been at this meeting, Kathy said something to me about |
| 17 | getting fired.  And she thought maybe she needed to get |
| 18 | an attorney.  Which I thought was a strange comment, |
| 19 | but a concerning comment, and I told Clay about that. |

(Larsen, R 24-12, PageID 683). There was no ambiguity that when Liebau told Choma and Larsen she was considering getting an attorney, Larsen understood that to be an allegation of age discrimination and was alarmed. In fact, Larsen

later testified that she notified Choma of Liebau's comments because "[Liebau] had indicated *she thought that I was discriminating against her based on her age*. And she had suggested she was going to get an attorney" (*Id*, PageID 685) (emphasis added). This is further evidence that, at least in Larsen's mind, the age discrimination complaints and the comment about needing an attorney were connected.

Liebau's comments on April 30 about needing an attorney should not have been considered in a vacuum. Rather, as Larsen correctly understood it to be, it was part of a pattern in which Liebau complained about her treatment and the impact the wheelchair was having on her. Thus, since Dykema chose to put Liebau on probation just nine days later, and fire her less than four months later, a reasonable juror could find that Dykema unlawfully retaliated against Liebau.

Even if this Court finds Liebau's prior complaints about the wheelchair, and her April 30 comment about needing an attorney, are still too vague to constitute protected activity, Liebau made another complaint on June 18, 2019 (roughly two months before her termination) in which it is undisputed that she directly asserted an age-based discrimination claim (Choma notes, R 24-17, PageID 781). The District Court found that Liebau could not rely on this statement to support her retaliation claim because Liebau was already on probation by the time she made the complaint (Opinion, R 30, PageID 944).

38

While an employee who is about to terminated for other reasons cannot make a discrimination complaint to save her job, in this case it is far from a foregone conclusion that Liebau was going to be terminated in June 2019. For instance, Liebau continued working for an additional two months after her June complaint, and Dykema even chose to extend her probation during this period. Thus, a reasonable juror could conclude even though Liebau was on probation at the time she made the June 18 age complaint, Dykema nevertheless retaliated against Liebau by terminating her shortly thereafter.

Additionally, for the reasons previously stated, Liebau has raised sufficient doubt concerning the veracity of the complaints Larsen had made against her and whether they were sufficient to warrant termination. Therefore, there are questions of fact as whether Liebau's probation was warranted in the first place. Further disciplinary action, including her termination, could be seen as retaliation if not for her prior complaints, but for her subsequent June 2019 complaint of age discrimination.

At a very minimum, all these questions of fact render summary judgment improper on Liebau's retaliation claim.

# CONCLUSION

For these reasons, Plaintiff-Appellant respectfully requests an Order reversing the District Court's grant of summary judgment and remanding this case for trial.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/Brian J. Farrar
       Brian J. Farrar (P79404)
       Attorneys for Plaintiff-Appellant
       33 Bloomfield Hills Pkwy., Ste. 250
       Bloomfield Hills, MI 48304
Dated: July 20, 2023     (248) 644-1500

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation provided in Fed R App P 32(a)(7)(B) because it contains 8560 total words in Calisto MT (14 point) proportional type. The word processing software used to prepare this brief was Microsoft Word 2016.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:  /s/ Brian J. Farrar
      Brian J. Farrar (P79404)
      Attorneys for Plaintiff-Appellant
      33 Bloomfield Hills Pkwy., Ste. 250
      Bloomfield Hills, MI 48304
      (248) 644-1500

Dated: July 20, 2023

## CERTIFICATE OF SERVICE

This certifies that Plaintiff-Appellant's Corrected Appeal Brief was served on July 20, 2023, by electronic mail using the CM/ECF system upon the following attorneys:

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Brian J. Farrar
       Brian J. Farrar (P79404)
       Attorneys for Plaintiff-Appellant
       33 Bloomfield Hills Pkwy., Ste. 250
       Bloomfield Hills, MI 48304
       (248) 644-1500

Dated: July 20, 2023

## DESIGNATION OF RECORD

| Doc. Entry No. | Date Entered | Description of Doc. | Page ID |
|---|---|---|---|
| R 30 | 03/02/2023 | Opinion and Order | 915, 931, 934, 936, 938-39, 944 |
| R 31 | 03/02/2023 | Judgment | 947 |
| R 34 | 03/30/2023 | Notice of Appeal | 959 |
| R 24-2 | 09/01/2022 | Liebau deposition | 469, 479, 481-82, 485-86, 487-488, 490, 491-493, 497-498, 499-500, 502-03, 543-540, 542, 549, 552-553, 567-572 |
| R 24-3 | 09/01/2022 | Email changing job title 608 | 608 |
| R 24-4 | 09/01/2022 | Roster for Consumer Matters Team Members | 610 |
| R 24-5 | 09/01/2022 | Guise deposition | 615-17, 619, 620, 629, 635 |
| R24-6 | 09/01/2022 | Guise 2015 performance review | 656-57 |
| R 24-7 | 09/01/2022 | Guise 2016 performance review | 658-59 |
| R 24-8 | 09/01/2022 | Guise 2017 email to Choma | 660 |
| R 24-9 | 09/01/2022 | Guise 2018 performance review | 661-62 |
| R 24-10 | 09/01/2022 | Larsen 2018 performance review | 663-64 |
| R 24-11 | 09/01/2022 | Larsen 2019 performance review | 665 |
| R 24-12 | 09/01/2022 | Larsen deposition | 674, 676-677, 681, 683-685, 687-688, 689, 690 |

| Doc. Entry No. | Date Entered | Description of Doc. | Page ID |
|---|---|---|---|
| R 24-13 | 09/01/2022 | Liebau Declaration | 710-714 |
| R 24-14 | 09/01/2022 | Choma deposition | 720-721, 728, 733 |
| R 24-15 | 09/01/2022 | Dykema's Interrogatory Answers | 765 |
| R 24-16 | 09/01/2022 | Choma 2019 performance review | 778 |
| R 24-17 | 09/01/2022 | Choma meeting notes | 780-82 |
| R 24-18 | 09/01/2022 | Larsen email to Choma May 6 | 784-85 |
| R 24-19 | 09/01/2022 | May 9 memo | 786 |
| R 24-20 | 09/01/2022 | Guise May 16 email | 787 |
| R 20-21 | 08/01/2022 | Termination letter | 408-09 |
| R 20-13 | 08/01/2022 | Feb 2018 Memo | 385-86 |
| R 24-23 | 09/01/2022 | Job Description | 793-95 |