No. 23-1301

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

KATHLEEN LIEBAU,

     Plaintiff-Appellant,

v.

DYKEMA GOSSETT, P.L.L.C.,

     Defendant-Appellee.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division
Case No. 21-cv-11823
Honorable Shalina Kumar

**BRIEF FOR DEFENDANT-APPELLEE**

Elizabeth Hardy (P37426)
David Porter (P76785)
KIENBAUM HARDY VIVIANO
PELTON & FORREST, P.L.C.
280 N. Old Woodward, Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
ehardy@khvpf.com
dporter@khvpf.com

*Attorneys for Defendant-Appellee*

Dated: August 21, 2023

# CORPORATE DISCLOSURE STATEMENT

1. Is said party a subsidiary or affiliate of a publicly owned corporation?

    **No.**

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?

    **No.**

# TABLE OF CONTENTS

<u>Page</u>

Corporate Disclosure Statement............................................................ i

Table of Authorities ............................................................................. iv

Statement Regarding Oral Argument................................................... vii

Introduction ......................................................................................... 1

Statement of the Case .......................................................................... 2

    A.    Kathy Liebau grows comfortable in a specialized, but time-limited Administrative Assistant role at Dykema Gossett...................................... 2

    B.    Liebau's transition to new projects exposes shortcomings in her attitude and professionalism. .......................................................... 3

    C.    Dykema places Liebau on a 90-day Performance Improvement Plan........................................................................................ 8

    D.    Liebau's pattern of misconduct continues, resulting in the termination of her employment................................................ 12

    E.    Liebau sues Dykema but fails to substantiate her allegations of age discrimination and retaliation.................................................. 14

Summary of Argument ...................................................................... 17

Argument........................................................................................... 19

I.    The district court correctly granted summary judgment on Liebau's age-discrimination claims. ............................................................... 19

    A.    Liebau failed to establish a prima facie case of age discrimination because she was not terminated under circumstances that support an inference of discrimination. .................................................. 19

        1.    The district court correctly found that Liebau was not treated differently than any similarly situated employee. .............. 20

2.  Larsen's remarks do not support an inference of
    discrimination because she was not a decision maker.................. 23

B.  In any event, the district court correctly ruled that Liebau cannot
    show that Dykema's justification for termination was pretext for
    age discrimination......................................................................... 26

1.  Liebau cannot demonstrate pretext through Larsen's
    alleged ageist remarks because she was not a
    decisionmaker.................................................................... 27

2.  Liebau cannot establish pretext through a cat's paw theory........ 29

3.  Liebau cannot show that any of Dykema's stated reasons
    for termination have no basis in fact.................................. 31

II.  The district court correctly granted summary judgment on Liebau's
     retaliation claims................................................................................ 35

A.  As the district court found, Liebau cannot establish a prima facie
    case of retaliation because there is no causal link between her only
    instance of protected activity and her termination................................... 35

1.  The earliest potential instance of protected activity was
    during Liebau's June 18th performance improvement
    meeting. ........................................................................... 35

2.  There is no evidence of a causal link between Liebau's June
    18th allegation of age-based animus by Larsen and Liebau's
    termination....................................................................... 40

B.  In any event, Liebau cannot show that Dykema's reasons for
    termination were pretext for retaliation....................................... 42

Conclusion and Relief Requested......................................................... 43

Certificate of Compliance.................................................................... 44

Certificate of Service .......................................................................... 45

Designation of Relevant District Court Documents ...................................... 46

# TABLE OF AUTHORITIES

Page

## Cases

*Aerel, S.R.L. v. PCC Airfoils, LLC,*
448 F.3d 899 (6th Cir. 2006) ................................................................. 37

*Beard v. AAA of Michigan,*
593 F. App'x 447 (6th Cir. 2014) ........................................................ 41

*Blair v. Henry Filters, Inc.,*
505 F.3d 517 (6th Cir. 2007) ........................................................ *passim*

*Bledsoe v. Tennessee Valley Authority Bd. of Directors,*
4 F.4th 568 (6th Cir. 2022) .................................................................. 40

*Blizzard v. Marion Technical College,*
698 F.3d 275 (6th Cir. 2012) ............................................................... 40

*Chen v. Dow Chem. Co.,*
580 F.3d 394 (6th Cir. 2009) ............................................................... 26

*Clark Cnty. Sch. Dist. v. Breeden,*
532 U.S. 268 (2001) ................................................................. 18, 42

*Clay v. United Parcel Serv, Inc,*
501 F.3d 695 (6th Cir. 2007) ................................................... 35, 42

*Cooper v. City of N. Olmsted,*
795 F.2d 1265 (6th Cir. 1986) ............................................................. 41

*Davis v. Omni–Care, Inc.,*
482 F. App'x 102 (6th Cir. 2012) ........................................................ 31

*DeFlaviis v. Lord & Taylor, Inc.,*
223 Mich. App. 432 (1997) ................................................................. 35

*Diebel v L & H Res, LLC,*
492 Fed. Appx. 523 (6th Cir. 2012) ................................................... 21

*EEOC v Ford,*
782 F.3d 753 (6th Cir. 2015) ....................................................... 15, 27

*Gantt v. Wilson Sporting Goods Co.*,
    143 F.3d 1042 (6th Cir. 1998) ..................................................................... 20

*Garg v. Macomb Cty. Cmty. Mental Health Servs.*,
    472 Mich. 263 (2005) ................................................................................. 40

*Geiger v. Tower Auto*,
    579 F.3d 614 (6th Cir. 2009) ................................................................ 19, 24

*Grosjean v. First Energy Corp*,
    349 F.3d 332 (6th Cir. 2003) ..................................................................... 21

*Gross v. FBL Fin. Servs., Inc.*,
    557 U.S. 167 (2009) ......................................................................... 20, 23, 26

*Guimaraes v. SuperValu, Inc.*,
    674 F.3d 962 (8th Cir. 2012) ..................................................................... 24

*Hagedorn v Veritas Software Corp*,
    129 F. App'x 1000 (6th Cir. 2005) ............................................................ 21

*Marshall v. The Rawlings Company, LLC*,
    854 F.3d 368 (6th Cir. 2017) ..................................................................... 29

*McDonnell Douglas Corp. v. Green*,
    411 U.S. 792 (1973) ................................................................................... 19

*McKinnon v. L-3 Communications Corp.*,
    814 F. App'x 35 (6th Cir. 2020) ................................................................ 16

*Mitchell v Toledo Hosp*,
    964 F.2d 577 (6th Cir. 1992) ..................................................................... 21

*Morgan v. Hilti, Inc.*,
    108 F.3d 1319 (10th Cir. 1997) ................................................................. 41

*Pelcha v. BM Bancorp, Inc.*,
    988 F.3d 318 (6th Cir. 2021) ..................................................................... 25

*Radvansky v. City of Olmsted Falls*,
    395 F.3d 291 (6th Cir. 2005) ................................................................ 23, 28

*Rees v. W.M. Barr & Co., Inc.*,
    736 F. App'x 119 (6th Cir. 2018) ...................................................23, 34, 37

*Risch v. Royal Oak Police Dep't,*
   581 F.3d 383 (6th Cir. 2009) ........................................................... 28

*Roberts v. Principi,*
   283 F. App'x 325 (6th Cir. 2008) ................................................... 30

*Rouch World, LLC v. Dep't of Civil Rights,*
   510 Mich. 398 (2022) ..................................................................... 27

*Seoane-Vazquez v. Ohio State Univ.,*
   577 F. App'x 418 (6th Cir. 2014) ............................................ 29, 31

*Smith v. Leggett Wire Co.,*
   220 F.3d 752 (6th Cir. 2000) ......................................................... 21

*Spengler v. Worthington Cylinders,*
   615 F.3d 481 (6th Cir. 2010) ......................................................... 35

*Swierkiewicz v. Sorema N.A.,*
   534 U.S. 506 (2002) ....................................................................... 19

*Tingle v. Arbors at Hilliard,*
   692 F.3d 523 (6th Cir. 2012) ......................................................... 42

*Town v. Michigan Bell Tel. Co.,*
   455 Mich. 688 (1997) ..................................................................... 19

*United States v. Hunt,*
   278 F. App'x 491 (6th Cir. 2008) ................................................... 24

*White Oak Prop. Dev., LLC v. Washington Twp., Ohio,*
   606 F.3d 842 (6th Cir. 2010) ...........................................23, 34, 37

*Wilcoxon v Minnesota Min & Mfg Co,*
   235 Mich. App. 347 (1999) ............................................................ 20

## STATEMENT REGARDING ORAL ARGUMENT

Dykema Gossett requests oral argument because it could significantly aid the decisional process in this case. *See* 6th Cir. R. 34(a). Although the issues are not novel or particularly fact intensive, Liebau's opening brief contains multiple factual assertions that are not supported by the record. Dykema has attempted to correct or clarify what it perceives to be the most important misstatements in this brief, but it requests the opportunity to address any additional questions this Court may have regarding the record and to respond to any new arguments or factual assertions that Liebau may make in her reply brief.

**INTRODUCTION**

Kathy Liebau, a former Administrative Assistant at the law firm Dykema Gossett, is allergic to constructive criticism. Whether it was counseling from her direct supervisor, or course corrections from more senior members of her litigation team, Liebau could not accept responsibility and, as one team leader put it, "row in the same direction." It was a toxic trait for someone whose job required her to take direction from others. Eventually, her resistance to her supervisors' authority landed her on probation and, when that proved unsuccessful, resulted in her termination.

In response, Liebau sued her former employer claiming age discrimination and retaliation. But discovery failed to support her misguided perceptions of age-based animus, and the district court granted summary judgment in Dykema's favor. Liebau, who was only 53 years old when she was terminated, was replaced by someone who was three years *older* than her. What's more, the only person she accused of age-based animus at Dykema—a staff attorney overseeing her work, Chelsea Larsen—was not a decisionmaker, much less a proponent of her termination. Nor could Liebau's last-minute accusation of age discrimination—an obvious attempt to plant the seeds of a retaliation claim—derail the termination process already under way when she complained. The fact is, Liebau was terminated not because of her age but because of her attitude. The district court correctly granted summary judgment. This Court should affirm.

## STATEMENT OF THE CASE

**A.    Kathy Liebau grows comfortable in a specialized, but time-limited Administrative Assistant role at Dykema Gossett.**

Dykema Gossett is a law firm that provides legal services to clients across the country. To provide high-quality, cost-effective services, Dykema relies on a dedicated team of support staff, which includes Administrative Assistants ("AA"). As the title suggests, Administrative Assistants "[a]ssist attorneys and paralegals," performing a variety of administrative tasks depending on the needs of the professional they support. (AA Job Description, ECF No. 20-8, Page.ID.370.) Though they often interact with attorneys and paralegals, Administrative Assistants report to an Office Administrator, who supervises their workload, performance, and compliance with firm policies and expectations. (Choma Dep., ECF No. 20-4, Page.ID.313, 318.)

Plaintiff Kathy Liebau was an Administrative Assistant in Dykema's Bloomfield Hills office. She reported to Office Administrator, Susan Choma. (Liebau Dep. I, ECF No. 20-2, Page.ID.296.) Liebau's duties as Administrative Assistant varied during her career. In her early years, she performed traditional administrative tasks. (Choma Dep., ECF No. 20-4, Page.ID.315.) Around 2006, her duties expanded to include some less traditional Administrative Assistant functions when Dykema assigned Liebau to assist Clay Guise, an attorney managing large groups of product-defect cases against a carmaker. (Liebau Dep. II, ECF No. 20-3, Page.ID.304; Choma Dep., ECF No. 20-4, Page.ID.315.) Liebau helped by drafting standard responses to discovery requests,

2

sending initial requests for documents to the client, and providing other logistical support. (Liebau Dep. I, ECF No. 20-2, Page.ID.295.) Although some of these duties resembled paralegal duties, Liebau always remained an Administrative Assistant and reported to Choma, the supervisor of the Administrative Assistants in Dykema's Bloomfield Hills office.[1] Given the high volume of cases and repetitive nature of the work, Liebau became proficient at her tasks without much oversight or correction from Guise. (*See, e.g.*, Performance Eval., ECF No. 29-1, PageID.845 ("Kathy's unique position is one that is fairly autonomous.").) But there were also early indications of more serious issues to come. According to Guise, Liebau displayed difficulties accepting new direction and working cooperatively with the team. (*See* Guise Dep., ECF No. 20-6, PageID.346–47; 2016 Guise Feedback, ECF No. 29-1, PageID.855.)

### B. Liebau's transition to new projects exposes shortcomings in her attitude and professionalism.

Over time, the large group of product-defect cases became a small handful. By 2017, Guise forecasted that his projects would soon stop generating enough work to keep Liebau busy. (*See* 2017 Annual Review, ECF No. 20-9, Page.ID.373; Liebau Dep. II, ECF No. 20-3, Page.ID.304). That summer, Choma met with Liebau to encourage her to "reinvent herself" by re-learning traditional administrative tasks if she was to stay busy enough to remain employed. (Choma Dep., ECF No. 20-4, Page.ID.314–15.)

---

[1] Liebau, in fact, never applied for a paralegal position since, in her mind, she already was acting as one. (*Id.* at Page.ID.296.)

("[S]o instead of just saying, 'The project ended, your work has ended, and therefore your job has ended,' you know, I was trying to be as resourceful as possible to find other work for her to do[.]").)

Choma's advice fell on deaf ears. After several years of assisting on Guise's product-defect cases, Liebau could not bring herself to perform traditional Administrative Assistant duties consistent with her job classification. (Liebau Dep. I, ECF No. 20-2, Page.ID.295–96.) When Choma found a temporary, but traditional Administrative Assistant assignment for Liebau in Dykema's Detroit Office, she fought the decision by complaining so loudly in front of the Detroit staff that she lasted only a few days, leaving the Detroit office short-staffed. (Choma Dep., ECF No. 20-4, Page.ID.324.)

Then an opportunity arose for Dykema—and Liebau—in Fall 2017. Dykema acquired a new engagement centered on California's new lemon law that allowed aggrieved owners to sue carmakers and recoup their attorneys' fees. Seeing a spike in litigation costs, one carmaker hired Dykema with the goal of resolving cases as quickly as possible, ideally before answering the complaint, to keep costs low. (Guise Dep., ECF No. 20-6, Page.ID.343; Sept. 28, 2017 Liebau Email, ECF No. 20-24, Page.ID.414.)

Hopeful that Liebau's background would make her a good fit for this work (which, like the prior project, required cost-effective management of many similar cases), Dykema assigned Liebau to assist the managing partner, Guise, and staff attorney

4

Chelsea Larsen, who was responsible for the day-to-day management of the cases and was Liebau's direct contact on the new project. (*Id.* at Page.ID.345, 347; Larsen Dep., ECF No. 20-5, Page.ID.326.) Larsen had not worked with Liebau before, but considered her a "work friend[]." (Larsen Dep., ECF No. 20-5, Page.ID.328.) Rounding out the lemon-law team were two other support staff who periodically assisted with some of Liebau's tasks on an overflow basis: paralegal Robin Kowalski and independent contractor Lisa Myers.  (*Id.* at Page.ID.326–27.)

Almost as soon as Liebau transitioned to the new project, she began ignoring workplace rules. She started coming in late and not calling in beforehand, working unauthorized overtime, and working from home without authorization—all of which were prohibited for Administrative Assistants like Liebau. (*See* Jan. 2018 Meeting Notes, ECF No. 20-15, Page.ID.395; Feb. 5, 2018 Memo, ECF No. 20-13, Page.ID.385.) It was Choma's job to ensure Liebau complied with these workplace rules. (Choma Dep., ECF No. 24-14, Page.ID.719.) So in January 2018, after two-and-a-half months of Liebau arriving late to work virtually every day, Choma scheduled a counseling session to remind Liebau of Dykema's expectations. (Jan. 2018 Meeting Notes, ECF No. 20-15, Page.ID.395; Feb. 5, 2018 Memo, ECF No. 20-13, Page.ID.385.) Liebau acknowledged that she had been late and working from home in violation of Choma's instructions, but she refused to accept responsibility for her actions. As recounted in Liebau's annual review, Liebau was "confrontational" with Choma and "gave [her] a lot

of push-back, seemingly needing to have the last word." (2018 Annual Review., ECF No. 20-16, Page.ID.396.)[2]

Liebau's resistance to authority also emerged on the lemon law project. Although this project was like Liebau's previous ones, it still involved a "learning curve." (2018 Larsen Feedback, ECF No. 20-10, Page.ID.379.) Larsen and Guise placed a higher value on efficiency and precluded Liebau from working overtime unless they approved it. (Feb. 3, 2018 Email, ECF No. 20-11, Page.ID.381. May 30, 2018 Email, ECF No. 20-12, Page.ID.382.) Despite these expectations, Liebau continued to flout the overtime restrictions, working on holidays, weekends, and through lunch to bill Dykema for overtime. (Feb. 5, 2018 Memo, ECF No. 20-13, Page.ID.385.)

Liebau also struggled with time management, refusing to take direction from Larsen on what tasks were—and were not—necessary to accomplish the client's litigation goals. Larsen identified this as an opportunity for improvement in Liebau's 2018 feedback: "Kathy has had a bit of difficulty prioritizing tasks on this new project. Initially she was spending time on non-value-added tasks at the expense of finishing case assessment summaries in a timely manner. She is showing improvement in this

---

[2] Liebau's resistance toward Choma went as far as refusing to acknowledge her supervisory authority. To this day, Liebau refuses to acknowledge that Choma was her supervisor. (Liebau Dep. II, ECF No. 24-2, Page.ID.549 ("She wasn't my -- she wasn't my supervisor. My supervisors [were] Clay Guise, Brittany Schultz, [and] Lisa Brown for a while.").)

area also." (2018 Larsen Feedback, ECF No. 20-10, Page.ID.379.) Guise agreed that Liebau "can do a better job providing [Larsen] what [Larsen] needs to draft assessments." (2018 Guise Feedback, ECF No. 20-14, Page.ID.393.) But he also observed a larger issue at play, noting that Liebau "can be resistant to ideas that are different than hers regarding procedure and this is an area for improvement." (*Id.,* at Page.ID.393.)

Despite needing improvement in these key areas, Liebau continued to provide satisfactory work product and her overall performance was meeting expectations—in line with previous performance reviews. Liebau, however, was dwelling on what she thought were negative aspects of her review. As Larsen later recounted, Liebau broached the subject of her annual review shortly after she received it. (Larsen Dep., ECF No. 24-12, Page.ID.683.) During the conversation, Liebau mentioned that she was concerned about getting fired and made a cryptic statement that she "thought maybe she needed to get an attorney." (*Id.* at Page.ID.683; *see also* Choma Notes, ECF No. 24-17, Page.ID.780 (reflecting the same account, as reported to her by Larsen).) At no point did Liebau mention concerns about age bias by Larsen (or any other potential wrongdoing by Dykema).[3] (*Id.* at Page.ID.781.) Larsen did not understand what

---

[3] In a declaration filed in response to Dykema's summary judgment motion, Liebau tried to claim that she overtly complained of age discrimination during this meeting. (*See* Liebau Dec., ECF No. 24-13, Page.ID.710–14.) But the district court struck this fact from the record because it directly contradicted her testimony on the timing of her first complaint (June 18, 2019) and her testimony about the April 30th meeting in which

prompted Liebau's statement, but, as a precaution, she informed Guise, who later relayed the information to Choma. (Larsen Dep., ECF No. 24-12, Page.ID.683.)

### C. Dykema places Liebau on a 90-day Performance Improvement Plan.

Liebau ignored the constructive feedback in her 2018 review, and over time it became clear to Guise that Liebau was "swimming against the stream" and creating "dysfunction in the team." (Guise Dep., ECF No. 20-6, Page.ID.346–47, 348–49.) Liebau's poor attitude and resistance to authority eventually led Dykema (through Choma) to place her on a formal performance improvement plan.

The impetus occurred in April 2019, when Liebau was covering for Larsen's primary Administrative Assistant, Shannon Stewart, who was away on vacation. (Larsen Dep., ECF No. 20-5, Page.ID.329; May 9, 2019 Memo, ECF No. 20-17, Page.ID.401.) At the start of the week, Larsen instructed Liebau by email to run a "conflict check"— a routine, but critical and time-sensitive administrative task that ensures Dykema has no conflict of interest before taking a case. (May 9, 2019 Memo, ECF No. 20-17, Page.ID.401.) Liebau did not turn to the task for *three days*, at which point she returned to Larsen asking if she could leave it for Stewart to complete the next week because she did not have a necessary piece of information. (*Id.* at Page.ID.401.) Larsen said "no," in no uncertain terms, and told her to get the information from Guise. (*Id.* at

---

she stated, "I do not recall ever telling Chelsea I was going to get an attorney." (MSJ Opn., ECF No. 30, Page.ID.943, citing Liebau Dep. II, ECF No. 26-1, Page.ID.837.)

Page.ID.401; *see also* Liebau Dep. II, ECF No. 20-3, Page.ID. 307 ("[S]he said, 'I think it's Clay on all the switch stuff. Go ask him.' ").)

Liebau ignored Larsen's directive. (Liebau Dep. II, ECF No. 20-3, Page.ID.308.) She instead waited until the end of the next day (i.e., close of business on Friday) to email Stewart, telling her that she had "saved" the conflict check for her. (*Id.* at Page.ID. 308; May 9, 2019 Memo, ECF No.20-17, Page.ID.401.) Liebau's decision drew a sharp rebuke from Larsen, who wrote to Liebau that "[i]t is not acceptable that you chose to save this for [Stewart] despite my instructions not to do so." (May 9, 2019 Memo, ECF No. 20-17, Page.ID.402.)

Larsen related this incident to Choma, who consulted with Dykema's Chief Human Resources Officer before deciding to place Liebau on a 90-day probation. (Choma Dep., ECF No. 20-4, Page.ID.316–17; Clinton Dep., ECF No. 20-7, Page.ID.369.) Choma met with Liebau to discuss the incident and her probationary status. Choma outlined the reasons for her probationary status in a written memo, which ended with a clear statement of Dykema's expectations:

> Your performance and adherence to stated directives must immediately improve and be maintained at a satisfactory level. If there is no improvement observed at any time during this 90-day period, or thereafter, your employment will be terminated. [May 9, 2019 Memo, ECF No. 20-17, Page.ID.401.]

Larsen, who did not ask Choma to discipline Liebau, did not know that Choma placed Liebau on probation until roughly a month later. (Larsen Dep., ECF No. 20-5, Page.ID.332.) On June 14, 2019, Larsen stopped by Liebau's desk to discuss a work

matter. (*Id.* at Page.ID.330.) During the conversation, Liebau told Larsen for the first time that she had been correcting errors in Kowalski's work before submitting it to Larsen. (*Id.* at Page.ID.331.) When Larsen asked for more information, Liebau threw her hands up and refused to explain, claiming that she was on probation because of a "fake conversation" that Larsen had made up, referencing the conflict-check instruction that Liebau ignored. (*Id.* at Page.ID.331.) Liebau accused Larsen of lying before storming off, exclaiming, "I can't talk to you." (*Id.* at Page.ID.330–31.)

Larsen felt compelled to ask Choma about the interaction. (*Id.* at Page.ID.331.) All three met several days later, on June 18, 2019, to discuss the incident. It was, as Choma put it, an "awful, awful meeting." (Choma Dep., ECF No. 20-4, Page.ID.318.) From the outset, Liebau was disrespectful and confrontational, calling both Choma and Liebau "honey." (*Id.* at Page.ID.318; Larsen Dep., ECF No. 20-5, Page.ID.333; Liebau Dep. II, ECF No. 20-3, Page.ID.310; July 1, 2019 Memo, ECF No. 20-18, Page.ID.404.) She mocked Larsen, repeating her statements in a sarcastic, condescending tone. (Choma Dep., ECF No. 20-4, Page.ID.318; July 1, 2019 Memo, ECF No. 20-18, Page.ID.404.) Choma cautioned Liebau that she was being unprofessional. (Choma Dep., ECF No. 20-4, Page.ID.318.) Asked about her remarks to Larsen, Liebau insisted that Larsen never instructed her to get the information she needed from Guise. (July 1, 2019 Memo, ECF No. 20-18, Page.ID.404.) Liebau's position contradicted the one she took in a contemporaneous email in which she

recalled Larsen telling her to "go ask him," referring to Guise. (May 10, 2019 Email, ECF No. 20-19, Page.ID.406.)

After her outburst, in what appeared to Choma as Liebau "grasping for straws," Liebau suggested for the first time that Larsen's motivation was age discrimination, citing an incident four years earlier, in 2015, involving Liebau's 50th birthday. (Choma Dep., ECF No. 20-4, Page.ID.318–19; Liebau Dep. I, ECF No. 20-2, Page.ID.298–99; Liebau Dep. II, ECF No. 20-3, Page.ID.311 (both admitting that June 18, 2019, was first complaint of age discrimination).) Liebau complained that four years ago, Larsen and another coworker had decorated Liebau's desk with adult diapers, toy pill bottles, and a wheelchair as a light-hearted gesture to mark Liebau's milestone birthday— something they and others had done for other coworkers and attorneys without complaint. (Larsen Dep., ECF No. 20-5, Page.ID.336–37; Guise Dep., ECF No. 20-6, Page.ID.360.) Liebau's birthday was no exception. By all accounts, Liebau acted happy and celebratory in response to the gesture. (Larsen Dep., ECF No. 20-5, Page.ID.337.) Even Liebau admits she never complained about the gesture—or suggested any age-based animus by Larsen—until the June 18, 2019 meeting. (Liebau Dep. I, ECF No. 20-2, Page.ID.297–98; Larsen Dep., ECF No. 20-5, Page.ID.336; Ex. 3, Choma Dep., ECF No. 20-4, Page.ID.319.)

Larsen was surprised because Liebau "seemed to appreciate that [they] were celebrating her birthday at that time." (Larsen Dep., ECF No. 20-5, Page.ID.337.) She assured Liebau that she did not mean to offend her and that if she "had gotten any kind

of inkling that [Liebau] was upset," she "would have felt badly and tried to do something about it." (*Id.* at Page.ID. 337.) When Liebau mentioned for the first time that she was bothered by the wheelchair being stored in a workstation near hers, Choma and Larsen agreed to remove it, which they did that day. (Choma Dep., ECF No. 20-4; Page.ID.320.)

### D.   Liebau's pattern of misconduct continues, resulting in the termination of her employment.

Liebau's unprofessional conduct during the June 18th meeting led to another formal disciplinary meeting on July 1, 2019. Choma provided Liebau a memo summarizing the events of June 18th, which Liebau reviewed but again refused to sign. (July 1, 2019 Memo, ECF No. 20-18, Page.ID.405.) The memo cautioned Liebau:

> Due to ongoing incidents of misconduct, you are currently not on a trajectory to successfully complete your probation. This Memorandum will provide final notice to you that your attitude and workplace conduct must improve immediately, including demonstrating respect for your supervisor and Ms. Larsen in all of your communications.

Despite the clear warning, Liebau's attitude problems continued. During a scheduled vacation, Liebau identified Stewart as her out-of-office contact. (Out of Office Email Exchange, ECF No. 20-20, Page.ID.407.) But Stewart was not in the office for several of those days, either—a fact that Stewart told Liebau about before she left. (*Id.* at Page.ID.407.) When Choma asked Liebau why she did not fix her out of office message, she flippantly replied: "I cannot incur overtime." (Out of Office Email Exchange, ECF No. 20-25, Page.ID.417.) In a follow-up email, Choma stated that her

excuse was unacceptable. (*Id.* at Page.ID.415.) She also noted several more timekeeping and attendance policy infractions. (*Id.* at Page.ID.415–16.) She ended by *again* reminding Liebau "of [her] probationary employment status and the importance of complying with the firm's rules and expected standards of conduct." (*Id.* at Page.ID.416.)

It was to no avail. Several weeks later, Choma discovered two more similar timekeeping infractions, confirming for Choma that Liebau "was really making no effort to comply" with the terms of her probation. (Choma Dep., ECF No. 20-4, Page.ID.321–22.) At the end of her probationary term, in consultation with Dykema's Chief Human Resources Officer, Ayanna Clinton, Choma concluded that Liebau was making no effort to demonstrate a commitment to following Dykema's directives. (*Id.* at Page.ID.322 ("There was just . . . no evidence during this probationary period that she was on a trajectory to succeed with probation.").)[4]

With Clinton's approval, Choma decided to terminate Liebau's employment because of her "her overall attitude, just uncooperative, not seeming to want to make the necessary changes to successfully meet the requirements of her probation." (*Id.* at Page.ID.323; Clinton Dep., ECF No. 20-7, Page.ID.365, 368.) As stated in the termination letter, Dykema terminated Liebau's employment because she failed to

---

[4] For example, on the day the firm terminated Liebau's employment, she was shopping for a couch online during work time—time she insisted she had too little of to complete all the duties assigned to her. (*Compare* Choma Dep., ECF No. 24-14, Page.ID.739–40, *with* Liebau Dep. II, ECF No.20-3, Page.ID.308 ("[W]e are a very busy, busy project.").)

"maintain professional and respectful conduct," "comply with firm policies and procedures," and "demonstrate satisfactory performance improvement," all of which Dykema previously addressed in the series of performance-improvement memos and meetings (Termination Letter, ECF No. 20-21, Page.ID.408–09.) Later that month, Dykema hired Liebau's replacement, Anne Murphy. She was 56 years old—three years *older* than Liebau. (Diana Marshall Dec., ECF No. 20-23, Page.ID.413; Liebau Dep. I, ECF No. 20-2, Page.ID.294.)

### E.    Liebau sues Dykema but fails to substantiate her allegations of age discrimination and retaliation.

Liebau sued Dykema alleging two counts of age discrimination, one under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.*, and another under Michigan's Civil Rights Act, Mich. Comp. Laws §§ 37.2201, *et seq.* Liebau also alleged that her firing was unlawful retaliation under federal and state law. After discovery closed, Dykema moved for summary judgment, which the district court granted in full. (MSJ Opn., ECF No. 30.)

**Age Discrimination**. The district court agreed with Dykema that Liebau could not establish a prima facie case of age-discrimination through the traditional means of showing she was either (1) replaced by a substantially younger person or (2) treated differently than a substantially younger similarly situated employee. (MSJ Opn., ECF No. 30, Page.ID.931.) It found, nonetheless, that Liebau could satisfy her prima facie burden with Larsen's alleged remarks inquiring about Liebau's retirement and

14

recognizing her 50th birthday. (*Id.* at Page.ID.934.) According to the district court, these events created an inference of discrimination, even though Larsen was not involved in the termination. (*Id.*)

On the issue of pretext, the district court held that Liebau could not carry her ultimate burden of demonstrating Dykema's legitimate, non-discriminatory reasons for termination were pretextual. (*Id.* at Page.ID.935–40.) Relying on this Court's decision in *EEOC v Ford*, 782 F.3d 753, 768 (6th Cir. 2015), the court held that any age-based animus by Larsen could not demonstrate pretext because "Larsen was not consulted and did not recommend Liebau's termination. (*Id.* at Page.ID.939, citing ECF No. 24-12, Page.ID.673-74.) Nor could Liebau succeed on a so-called "cat's paw" theory, because there was no evidence that Larsen intended Liebau be fired—indeed, the evidence showed just the opposite. (*Id.* at Page.ID.674.) Finally, there was no evidence in the record to suggest that any of Dykema's stated reasons were false. (*Id.* at Page.ID.935–37.)

**Retaliation**. The district court rejected Liebau's contention that she engaged in protected activity by complaining of age-discrimination to Larsen on April 30th, shortly before she was placed on probation. (*Id.* at Page.ID.942–43.) That contention was based solely on a declaration Liebau filed in response to Dykema's summary judgment motion, which contradicted her deposition testimony on the topic: "Despite much questioning on the subject of when and to whom she complained of Larsen's age bias,

Liebau never suggests she did so before May 9[.]" (*Id.*, *citing* ECF No. 20-3, Page.ID.311; ECF No. 26-1, Page.ID.837.)

As for Liebau's accusation of age discrimination during her June 18th meeting with Choma and Larsen, the district court found that Liebau failed to establish a causal connection between that and her termination because, by then, "Liebau had been on probation for over a month and had already run afoul of her probation." (*Id.* at Page.ID.944.) Her termination two months later, after continued misconduct, was merely the result of Dykema "proceed[ing] along lines previously contemplated, though not yet definitively determined," when it placed Liebau on probation. (*Id.*) That, the court said, "is no evidence whatever of causality." (*Id.* (*quoting McKinnon v. L-3 Communications Corp.*, 814 F. App'x 35, 45 (6th Cir. 2020).)

## SUMMARY OF ARGUMENT

1. The district court properly granted summary judgment on Liebau's age discrimination claim. As a preliminary matter, Liebau failed to establish a prima facie case of discrimination because, as the district court found, she was not treated differently than a similarly situated comparator. Although the district court went on to conclude that isolated remarks by non-decisionmaker Larsen regarding Liebau's retirement plans and 50th birthday were enough, standing alone, to create an inference that *Choma's* termination decision was discriminatory, that conclusion contravenes this Court's published precedent that discriminatory remarks by someone with no "authority regarding personnel decisions" are "legally insufficient to satisfy [a plaintiff's] prima facie case." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 530 (6th Cir. 2007).

In any event, the district ultimately reached the right result because there is no record evidence showing that Dykema's reasons for termination were pretextual. As the district court found, Larsen's isolated remarks unconnected to the termination decision have no probative bearing on the decisionmaker's motivation, and Liebau's cat-paw argument is refuted by Larsen's own testimony that she worked to *forestall* any potential adverse action.

2. The district court also properly granted summary judgment on Liebau's retaliation claim. Her first and only instance of alleged protected activity occurred on June 18, 2019, after she was already on probation and struggling to improve her performance. Her termination two months later, after continued misconduct, was

merely Dykema "proceed[ing] along lines previously contemplated, though not yet definitively determined," when it placed Liebau on probation, which "is no evidence whatever of causality." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (per curiam). In any event, Liebau does not point to any evidence in the record that the stated reason for her termination was pretext for retaliation.

This Court should affirm the judgment of the district court.

## ARGUMENT

### I.  The district court correctly granted summary judgment on Liebau's age-discrimination claims.

Liebau alleges that Dykema's decision to terminate her employment is age discrimination under federal and state law. The parties agree that both sources of law require Liebau to satisfy the familiar three-step *McDonnell Douglas* framework to establish age discrimination. *Geiger v. Tower Auto*, 579 F.3d 614, 622 (6th Cir. 2009); *Town v. Michigan Bell Tel. Co.*, 455 Mich. 688 (1997). First, Liebau must "establish a prima facie case of . . . discrimination." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she succeeds at that initial step, the burden shifts to Dykema "to articulate some legitimate, nondiscriminatory reason for [her termination]." *Id.* If Dykema succeeds there, the burden shifts back to Liebau to prove that Dykema's stated reason is pretext for unlawful age discrimination. *Id.* at 804.

Liebau's claims fail at the first and third step of the analysis.

### A.  Liebau failed to establish a prima facie case of age discrimination because she was not terminated under circumstances that support an inference of discrimination.

To make out a prima facie case of age discrimination, Liebau must show, among other things, that she suffered an adverse employment action under "circumstances that support an inference of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). Generally speaking, plaintiffs can do that by showing that their employer either (1) replaced them with a substantially younger person or (2) treated them differently

than a substantially younger, similarly situated employee when it took its adverse action. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1048 (6th Cir. 1998); *Wilcoxon v Minnesota Min & Mfg Co*, 235 Mich. App. 347, 361 (1999).

The district court correctly found that Liebau could not establish this element of her prima facie case under either of these traditional means. Liebau was not replaced by someone younger than her, *see*, *supra*, p. 14, and she was not treated differently than a younger, similarly situated employee, *see*, *infra*, p. 20–23. Nevertheless, the district court agreed with Liebau's fallback argument that Larsen's alleged ageist remarks and conduct were sufficient to support the inference that her termination was unlawful discrimination. As explained below, this was error. This Court can—and should— affirm the result below by correcting the district court's mistake and reaffirming its precedent that remarks of a non-decisionmaker like Larsen are "legally insufficient to satisfy [a plaintiff's] prima facie case." *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 530 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 n.4 (2009).

### 1. The district court correctly found that Liebau was not treated differently than any similarly situated employee.

There is little dispute that Liebau is unable to establish the fourth prong of her prima case through the traditional means. Liebau claims that she was treated differently than a younger, similarly situated employee (App't. Br., pp. 17–18), but her argument is halfhearted at best.

20

For starters, Liebau does not grapple with the fact that her comparator must be "substantially younger" than her. *See Hagedorn v Veritas Software Corp*, 129 F. App'x 1000, 1002 (6th Cir. 2005) (holding that plaintiff must show "less favorable treatment compared to a similarly situated *and substantially younger* individual" (emphasis added)); *Diebel v L & H Res, LLC*, 492 Fed. Appx. 523, 529 (6th Cir. 2012) (applying the same "substantially younger" comparator requirement under both federal and Michigan law). Liebau's proposed comparator, paralegal Robin Kowalski, is only four years younger than her (*see* Marshall Dec., ECF No. 20-23, Page.ID.413), which, in the Sixth Circuit, is not enough to infer age discrimination. *See Grosjean v. First Energy Corp*, 349 F.3d 332, 340 (6th Cir. 2003) (establishing a bright line rule that "an age difference of six years or less" is "not significant"). Liebau does not address this fatal deficiency.

Second, Liebau does not challenge the basis for the district court's finding that Kowalski is not "similarly situated" to Liebau. To be "similarly situated" a comparator must share in all relevant aspects of employment "without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Smith v. Leggett Wire Co.*, 220 F.3d 752, 762 (6th Cir. 2000). That means they must share the same supervisor and relevant job standards, *and they must engage in the same conduct that prompted the adverse action. Mitchell v Toledo Hosp*, 964 F.2d 577, 583 (6th Cir. 1992).

Below, Liebau never responded to Dykema's argument that Kowalski was not similarly situated because she did not engage in the same conduct that prompted

Liebau's termination.[5] Consequently, the district court ruled that it "need not assess Kowalski as a comparator because Liebau has not pointed to any evidence that Kowalski engaged in any of the same conduct that resulted in Liebau's termination." (MSJ Opn., ECF No. 30, Page.ID.931.)

Liebau makes no mention of this ruling on appeal. Instead, she inaccurately claims that "the District Court found that Kowalski is not a proper comparator because Kowalski was a paralegal . . . and . . . had a different supervisor." (App't Br., p. 29, *citing* MSJ Opn., ECF No. 30, Page.ID.931.)[6] The district court made no such finding. (*See* MSJ Opn., ECF No. 30, Page.ID.931.) It focused exclusively on the most glaring distinction: the lack of similar conduct. (*Id.*) Because Liebau does not challenge the basis for the district court's decision, she has waived any argument that she has established a prima facie case of discrimination through disparate treatment of a similarly situated

---

[5] Dykema's summary judgment motion pointed out that the only commonality in conduct that Liebau offered during discovery was that Kowalski made mistakes in her work product without unfavorable treatment from Larsen, but those were not the infractions that prompted Liebau's termination. (Def's MSJ, ECF No. 20, Page.ID.280, *citing* Liebau Dep. II, ECF No. 20-3, Page.ID.302–303.)

[6] In any event, Liebau's argument that there is at least a question of fact whether Kowalski is similarly situated is meritless. It is undisputed that Choma did not supervise Kowalski and, thus, was not responsible for managing her performance or adherence to firm policies. (Choma Dep., ECF No. 20-4, Page.ID.324; Choma Dec., ECF No. 20-22, Page.ID.411.) Without a shared supervisor-decisionmaker, it is impossible to infer discriminatory animus from Choma's treatment of Liebau as compared to Kowalski. Moreover, Kowalski performed only some of the tasks Liebau did on the lemon law project at much smaller scale while also managing a slate of other responsibilities outside Liebau's scope of employment.

comparator. *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[F]ailure to raise an argument in [appellant's] appellate brief constitutes a waiver of the argument on appeal."); *White Oak Prop. Dev., LLC v. Washington Twp., Ohio*, 606 F.3d 842, 854 (6th Cir. 2010) (unchallenged basis for district court's decision "stands for purposes of this appeal"); *Rees v. W.M. Barr & Co., Inc.*, 736 F. App'x 119, 124 (6th Cir. 2018) ("[W]here a plaintiff fails to address the district court's reasoning in disposing of a claim on summary judgment or motion to dismiss, we have deemed the claim forfeited.") (citing cases).

### 2.    Larsen's remarks do not support an inference of discrimination because she was not a decision maker.

The district court should have stopped there and ruled that Dykema was entitled to summary judgment because Liebau failed to establish a prima facie case of discrimination. Instead, it adopted Liebau's argument that remarks by Larsen—a non-decisionmaker—were sufficient to support the inference of discriminatory discharge. (MSJ Opn., ECF No. 30, Page.ID.934.) This was error.

In *Blair v. Henry Filters, Inc.*, this Court held that discriminatory remarks by someone with no "authority regarding personnel decisions" are "legally insufficient to satisfy [a plaintiff's] prima facie case." 505 F.3d 517, 530 (6th Cir. 2007), *overruled on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178 n.4 (2009). The district court acknowledged this Court's holding in *Blair* but refused to follow it because the case law it cited was analyzing the issue at the pretext stage, when plaintiffs have a heavier burden

to carry than at the prima facie stage. (MSJ Opn., ECF No. 30, Page.ID.933–34.)  It was therefore "not persuaded" that lack of decision-making authority precluded courts from relying on discriminatory remarks to establish an inference of discrimination at the prima facie stage.  (*Id.* at Page.ID.934.)

It was not the district court's place to second-guess the correctness of *Blair*. District courts are bound by this Court's precedential holdings and must dutifully apply them, even if they are "not persuaded" by them. *See United States v. Hunt*, 278 F. App'x 491, 500 (6th Cir. 2008) (stating that the Sixth Circuit's published decisions "*must* be followed" by district courts) (emphasis added). *Blair* held, unequivocally, that discriminatory remarks by someone with no "authority regarding personnel decisions" are "legally insufficient to satisfy [a plaintiff's] *prima facie case.*" 505 F.3d 517, 530 (6th Cir. 2007). The comments offered by Liebau in support of her prima facie case by non-decisionmaker Larsen fall squarely within that holding, which is consistent with decisions within the Sixth Circuit and beyond. *See, e.g., Geiger v. Tower Auto.*, 579 F.3d 614, 624 (6th Cir. 2009) (holding that a non-decisionmaker's "comments about [the plaintiff's] retirement" was "not pertinent" at the prima-facie stage); *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 974 (8th Cir. 2012) ("[A] plaintiff can satisfy the fourth part of the prima facie case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased

24

comments by a *decisionmaker*.") (emphasis added).[7] This Court should therefore hold, in accordance with *Blair*, that Larsen's remarks, without more, are "legally insufficient to satisfy [Liebau's] prima facie case." *Blair*, 505 F.3d at 530.

It is worth noting that while the district court stated that evidence not related to a decision-maker can be considered at the prima facie stage to support an inference of discrimination, it did not explain how Larsen's conduct or comments created such an inference. For good reason. To taint Choma's decision, and thereby create an inference of discrimination, evidence related to Larsen must link back to Choma and her decision (made in conjunction with Dykema's Chief HR Officer) to terminate Liebau's employment. And there is no such evidence on this record. Liebau admitted that she does not suspect Choma of harboring age-based animus. (Liebau Dep II., ECF No. 20-3, Page.ID.311.) Indeed, Choma was not aware of the 50th birthday gag or that Liebau suspected Larsen of age-based animus until June 18, 2019—after she placed Liebau on probation. (Choma Dep., ECF No. 24-14, Page.ID.725, 732.) And, as the district court recognized in rejecting Liebau's cat's-paw theory, there can be no inference of discrimination in Choma's decision making due to Larsen's alleged bias if Choma was

---

[7] Notably, Liebau has not argued that *Blair* was wrongly decided or cited a single case in which a plaintiff has established a prima face case through discriminatory remarks by a non-decisionmaker alone. *Cf. Pelcha v. BM Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021) (cited by district court but involving statements someone with authority over personnel decisions (the CEO and President)).

not influenced by or even aware of the attributions to Larsen when she began the discipline process that ultimately resulted in Plaintiff's termination.  (*See* Larsen Dep., ECF No. 20-5, Page.ID.335; Choma Dep., ECF No. 20-4, Page.ID.322.)

This Court should hold that, contrary to the district court's ruling, Larsen's comments are legally insufficient to establish the fourth prong of Liebau's prima facie case and that no other evidence in the record supports the inference that Choma's termination decision was motivated by age discrimination. That holding, coupled with the fact that Liebau has waived any argument that she was treated differently than a similarly situated employee, *see*, *supra*, pp. 22–23, provides an alternative ground upon which to affirm the result below: Liebau has failed to establish the fourth prong of her prima facie case of age discrimination.

**B.    In any event, the district court correctly ruled that Liebau cannot show that Dykema's justification for termination was pretext for age discrimination.**

Even if Liebau could establish a prima facie case of age discrimination, Dykema has articulated legitimate nondiscriminatory reasons for her termination that, as the district court rightly found, she cannot establish were pretext for unlawful discrimination.

To establish pretext and survive summary judgment, Liebau must submit admissible evidence to prove her age, not these articulated reasons, was the true, "but-for" reason for her discharge. *See Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) (establishing "but-for"

causation under ADEA); *Rouch World, LLC v. Dep't of Civil Rights*, 510 Mich. 398, 420 (2022) ("[C]ausation is established where the discriminatory action would not have occurred but for the [protected characteristic] of the complainant.").

### 1.   Liebau cannot demonstrate pretext through Larsen's alleged ageist remarks because she was not a decisionmaker.

Liebau argues that the age-based animus reflected in Larsen's alleged remarks about her retirement and 50th birthday can be imputed to Dykema for purposes of establishing pretext. (Appt' Br., p. 19.) But "statements and actions by non-decisionmakers cannot alone prove pretext," *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 768 (6th Cir. 2015), and, according to every witness with knowledge, Larsen was not a decisionmaker. (Larsen Dep., ECF No. 20-5, Page.ID.329, 335; Choma Dep., ECF No. 24-14, Page.ID.720.)

Liebau, however, refuses to accept that well-established fact. She suggests that there is a question of fact on whether Larsen was a decisionmaker based on an isolated passage of Larsen's deposition testimony in which she said: "I don't know whether I was considering whether to terminate her or not, rather than should we continue having her work on this project." (App't Br., p. 19, citing Larsen Dep., ECF No. 24-12, Page.ID.688.) Here again, Liebau presents Larsen's testimony out of context. Larsen's statement was in response to the question, "[I]s there anything that you believe she should have been fired for?" (Larsen Dep., ECF No. 24-12, Page.ID.687–88.) And the beginning of her answer flatly contradicts the inference that Liebau asks this Court to

draw from the isolated passage that she relies on: "*That's just not my call.* I don't know. *It was certainly not something that I was deciding or trying to convince someone else to do.*"  (*Id.* at Page.ID.688 (emphasis added).)

No other record evidence undermines the unequivocal testimony of Larsen and Choma that Larsen was not a decisionmaker. Liebau notes that Larsen provided information to Choma about her performance. (App't Br., p. 20.) But she was expected to do so; Larsen, like all attorneys who supervised the work an Administrative Assistant, provided performance feedback to Choma, which served as one factor, among many, that Choma considered when assessing overall performance. (Choma Dep., ECF No. 24-14, Page.ID.719.) That does not make Larsen a *decision-maker*. Larsen testified unequivocally that she did not recommend Liebau be placed on probation or be terminated—indeed, she did not even know about both decisions until have they were made by Choma. (Larsen Dep., ECF No. 24-12, Page.ID.674, 677, 687.) The decisionmaker here was Choma, not Larsen. Larsen's remarks therefore have no bearing on whether *Choma's* stated reasons are pretext.[8]

---

[8] It is true that certain kinds of remarks by a non-decisionmaker may contribute to a finding of pretext when buttressed with other evidence of pretext, *see Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009), but Liebau does not argue that Larsen's comments fall into that narrow category, nor does she try to join them up with other evidence of pretext. (*See* App't Br, p. 22; *see also* MSJ Resp., ECF No. 24, Page.ID.459–61 (failing to make the argument below).) This Court has no obligation to do Liebau's work for her. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[F]ailure to raise an argument in [appellant's] appellate brief constitutes a waiver of the argument on appeal.").

### 2.    Liebau cannot establish pretext through a cat's paw theory.

Liebau next argues that, even if Larsen was not a decisionmaker, she can still establish pretext under a "cat's paw" theory because Larsen, a biased employee, influenced Choma, an unwitting dupe, to terminate Liebau. (App't Br., pp. 24–25.) To succeed on this theory, Liebau must show that (1) Larsen took actions intended to cause an adverse employment action, and (2) those actions were a but-for cause of the ultimate employment action. *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 428 (6th Cir. 2014).

Liebau faults district court for rejecting her cat's paw theory on the basis that Larsen did not "ma[ke] a biased recommendation for [Liebau] to be discharged." (MSJ Opn., ECF No. 30, Page.ID.940.) This was reversible error, Liebau says, because the biased agent need only "influence" the decisionmaker or "intend" to cause the adverse action. (App't Br., p. 24.) No explicit "recommendation" is required, she says. (*Id.*)

To the extent that Liebau's argument hinges on the semantic distinction between "recommend" and "influence" or "intend," she has not demonstrated reversible error. For starters, it is not reversible error to use the very terminology—"recommend"—that this Court used in published precedent to define the cat's paw standard. (*See* MSJ Opn., ECF No. 30, Page.ID.939, quoting *Marshall v. The Rawlings Company, LLC*, 854 F.3d 368, 379–80 (6th Cir. 2017) (holding that a plaintiff must show that a "biased subordinate" made a "biased recommendation" seeking a plaintiff's discharge).) Second, even if there

were a meaningful difference between "recommend" and "intend," the district court

expressly found that there was no "evidence that Larsen *intended* her termination":

> Larsen's undisputed testimony indicates that she did not even favor reassigning Liebau to another project, to say nothing of termination. When Guise asked Larsen's opinion on whether Liebau should be replaced on the project, she voiced her opposition, choosing instead to continue efforts to improve the problems with Liebau with better communication and management. ECF No. 24-12, Page.ID.674. Without evidence that Larsen intended her termination, Liebau has not met her burden of production and her cat's paw argument fails. [*Id.* at Page.ID.940.]

Liebau's singular focus on Larsen's role also overlooks that it takes two to

execute a cat's paw: a biased influencer *and* a "unthinking" dupe in a decisionmaker.

And the record here confirms that Choma was no dupe. Choma decided to terminate

Liebau's employment after an independent, holistic consideration of her conduct while

on probation, much of which Choma saw firsthand. (Choma Dep., ECF No. 20-4,

Page.ID.321–22.) *See Roberts v. Principi,* 283 F. App'x 325, 333 (6th Cir. 2008) ("[W]hen

a decisionmaker makes a decision based on an independent investigation, any causal

link between the subordinate's [discriminatory] animosity and the adverse action is

severed."). Although Larsen gave Choma *some* information about Liebau's behavior (her

refusal to perform a conflict check) prior to her probation, Choma independently

verified that information by reviewing the relevant email communication and

interviewing Liebau.[9] (Choma Dep., ECF No. 24-14, Page.ID.728–29; May 9, 2019 Memo, ECF No. 20-17, Page.ID.401.) And Choma's decision to terminate was based on unprofessional interactions she had with Liebau and her repeated refusal to her accept her direction while on probation, most of which had nothing to do with Larsen. (Choma Dep., ECF No. 20-4, Page.ID.321–23.) Through it all, Larsen was not consulted or involved in the termination decision. (Larsen Dep., ECF No. 20-5, Page.ID.329.) That precludes a finding of cat's paw liability under the but-for causation standard of the ADEA and ELCRA. *See Seoane-Vazquez*, 577 F. App'x at 428 ("If the [discriminatory] actions of non-decision-makers were nothing more than a motivating factor of [the employer's] decision, then [discrimination] could not have been a but-for cause . . . .").

### 3. Liebau cannot show that any of Dykema's stated reasons for termination have no basis in fact.

Lastly, Liebau contends that Dykema's three stated reasons for termination are pretextual because they do not have a basis in fact.

**Unprofessional conduct.** Liebau argues that Larsen's perception of her behavior during the June 18th meeting as not being disrespectful is enough to sew doubt

---

[9] When Liebau had an opportunity to address Larsen's concern, she admitted that she did not do the conflict check. *Davis v. Omni–Care, Inc.*, 482 F. App'x 102, 109–10 (6th Cir. 2012) (no cat's paw where the plaintiff admitted that he engaged in the misconduct for which he was discharged). Larsen was not consulted about the probation decision and only learned about it weeks later from Liebau. (*See* Larsen Dep., ECF No. 20-5, Page.ID.329; Liebau Dep. II, ECF No. 20-3, Page.ID.307.)

in Dykema's first reason for termination: her failure to "maintain professional and respectful conduct." (*See* App't Br., p. 28.)

*First*, Liebau is missing the forest for the trees. She focuses exclusively on her behavior at one meeting, overlooking that her unprofessional and disrespectful conduct is catalogued in multiple performance-improvement memos and emails. (May 9, 2019 Memo, ECF No. 20-17, Page.ID.401; July 1, 2019 Memo, ECF No. 20-18, Page.ID.404; July 8, 2019 Email, ECF No. 20-20, Page.ID.407.) As the district court found:

> Liebau's mocking and disrespectful tone at the June 2019 meeting with Larsen and Choma was only one of multiple instances of Liebau's unprofessional conduct. Liebau does not refute the occurrence or the impropriety of her public eruption at Larsen, which prompted the June 2019 meeting, or any of the other instances of unprofessional conduct documented by Choma. *See* ECF No. 24-17. [MSJ Opn., ECF No. 30, Page.ID.936.]

Liebau had ample opportunity to challenge those assessments at the time but didn't. Nor did she do so during her deposition. In fact, she admitted that Larsen instructed her to perform the conflict check discussed above and that she failed to do so (Liebau Dep. II, ECF No. 20-3, Page.ID.307); she admitted that she accused Larsen of lying during an outburst at her desk (*id.* at Page.ID.309); and she admitted that she called Larsen and Choma "honey" (*id.* at Page.ID.310). Choma also documented Liebau's continued timekeeping and attendance infractions—none of which Liebau disputes. (*Id.* at Page.ID.306.)

*Second*, even as it relates to the June 18, 2019 meeting, Liebau misconstrues Larsen's testimony. As the district court pointed out, "Larsen's testimony does not

dispute Choma's assessment of Liebau as mocking and disrespectful. When asked if Liebau had ever mocked her, Larsen responded: 'I think she changed her tone of voice when she was repeating something I had said.'" (MSJ Opn., ECF No. 30, Page.ID.936, citing ECF No. 24-12, Page.ID.683.) In any event, that Larsen (the same person Liebau claims had animus towards her) had a higher tolerance for Liebau's antics than did Choma does not render Choma's reasons for termination "false."[10]

*Third*, Dykema's concerns about Liebau's behavior issues did not develop overnight, as she suggests. Liebau's annual performance reviews dating back to 2015 reveal a documented history of difficulty accepting new direction and working cooperatively with the team. (*See* Guise Dep., ECF No. 20-6, Page.ID.346–47; 2016 Guise Feedback, ECF No. 29-1, Page.ID.855; *see generally* ECF 29-1 (collection of prior counselling memos and documented behavior concerns).)

**Policy infractions.** Dykema also cited Liebau's numerous policy infractions as a reason for her termination.  Liebau's only argument that this reason was false is that these infractions were not referenced in Choma's earlier memos. (App't Br., p. 32.) But

---

[10] Liebau's contention that her behavior is excusable because it was exhibited in response to blatant discrimination is misplaced for two reasons. First, that Liebau's behavior was justified in her view does not mean Dykema's stated reason has no basis in fact. Second, Liebau has provided no evidence that she faced "blatant discrimination" during the June 18, 2019 meeting. In fact, the record contradicts Liebau's claim that her unruly conduct occurred "in light of the ongoing discussion Liebau and Choma were having concerning age discrimination." (App't Br., pp. 30–31.) It was <u>after</u> Liebau acted unprofessionally and Choma admonished her that Liebau, for the first time ever, made an allegation of age discrimination. (Choma Dep., ECF No. 24-14, Page.ID.733.)

33

the district court identified the problem with this argument: "The time keeping anomalies Liebau questions were not raised by Choma in the May 9 or July 1 memoranda because they were not discovered until the latter part of July." (MSJ Opn., ECF No. 30, Page.ID.936–37.) Liebau again makes no mention of this ruling, thereby waiving this argument on appeal. *White Oak Prop. Dev., LLC v*, 606 F.3d at 854; *Rees*, 736 F. App'x at 124.

**Failure to make improvements.** Finally, Liebau is wrong to argue that the positive aspects of her annual performance reviews somehow undermine Dykema's third reason for termination, which was that she failed to "demonstrate satisfactory performance improvement." (Cf. App't Br., p. 34.) First, the unsatisfactory performance improvement cited by Dykema related to her conduct while on probation. There was no annual performance review conducted during that time. Second, Liebau is conflating two different aspects of her overall performance. Dykema never has suggested that Liebau was not competent on a substantive level. (*See* Def's MSJ, ECF No. 20, Page.ID.271.) She was. But what Liebau fails to appreciate is that there is more to workplace success than mastering the substantive skills needed to perform job tasks. Soft-skills—the ability to work with others, to take direction, and to adjust practices based on feedback—are just as important. Liebau was deficient in those areas and, equally troublesome, rejected Choma's efforts to help her improve. That is entirely consistent with her performance reviews.

In sum, the district court correctly granted summary judgment for Dykema on Liebau's age discrimination claim. She cannot establish a prima facie case and, regardless, she does not show that any of Dykema's reasons for termination were pretextual. This Court should affirm.

## II.     The district court correctly granted summary judgment on Liebau's retaliation claims.

Liebau also claims that her termination was in retaliation for accusing Larsen of age discrimination. Retaliation claims under the ADEA and Michigan's ELCRA follow the same analytical framework, and it's the same three-step approach applied above. *Spengler v. Worthington Cylinders*, 615 F.3d 481, 491 (6th Cir. 2010); *DeFlaviis v. Lord & Taylor, Inc.*, 223 Mich. App. 432, 436 (1997).

### A.     As the district court found, Liebau cannot establish a prima facie case of retaliation because there is no causal link between her only instance of protected activity and her termination.

To establish a prima facie claim of retaliation, Liebau must show that: (1) she engaged in "protected activity"; (2) Dykema knew this fact; (3) she suffered an adverse action; and (4) there is a causal connection between the protected activity and the adverse action. *Clay v. United Parcel Serv, Inc*, 501 F.3d 695, 713 (6th Cir. 2007).

#### 1.     The earliest potential instance of protected activity was during Liebau's June 18th performance improvement meeting.

A crucial first step in analyzing the prima facie case is identifying the protected activity, as it provides the anchoring point for assessing causation. During her

35

deposition, Liebau testified that the first and only time she complained of age-discrimination was during her June 18th meeting with Choma and Liebau, which was after she had been placed on probation and warned that, unless her behavior improved, her employment would be terminated. (*See* Liebau Dep. II, ECF No. 20-3, Page.ID.311.)

Despite this unequivocal testimony, Liebau filed a declaration in response to Dykema's summary judgment motion in which she tried to push back the date of her first complaint of age discrimination to just before she was placed on probation. (*See* Liebau Dec., ECF No. 24-13, Page.ID.711–12.) The district court saw this for what it was: a blatant attempt to rewrite the record, in contravention of her earlier testimony, in order to manufacture an issue of fact for trial. (*See* MSJ Opn., ECF No. 30, Page.ID.943 ("[Courts] may not consider declaration testimony in conflict with sworn deposition testimony, absent a compelling explanation for the disparity.").) The trial court rejected Liebau's sham declaration because, "[d]espite much questioning on the subject of when and to whom she complained of Larsen's age bias, Liebau never suggests she did so before May 9, and she disavowed ever discussing hiring an attorney with Larsen." (*Id.*, citing ECF No. 20-3, Page.ID.311; ECF No. 26-1, Page.ID.837.) It therefore focused solely on whether Liebau's June 18th statement was causally related to her termination.

Liebau makes no mention of this important ruling, much less argue that it was reversible error under the highly deferential abuse-of-discretion standard. *See Aerel,*

*S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 906 (6th Cir. 2006) (reviewing the district court's decision to strike portions of an affidavit for an abuse of discretion). Having failed to challenge the basis for the district court's decision to strike evidence that is pivotal to Liebau's argument on appeal, Liebau has waived any claim for relief on this claim. *See White Oak Prop. Dev., LLC*, 606 F.3d at 854 (unchallenged basis for district court's decision "stands for purposes of this appeal"); *Rees*, 736 F. App'x at 124 (failure to address the district court's reasoning in disposing of a claim on summary judgment constitutes forfeiture).

Liebau insists that other evidence in the record supports that she engaged in protected activity on April 30th. (App't Br., p. 36.) But this argument is immediately undercut by the fact that it is interwoven with the factual assumption from her declaration that she complained of age discrimination. For example, in describing the content of her statement to Larsen, Liebau states (without record citation) that she "complained to Larsen and Choma she was being discriminated against due to her age and might need an attorney." (App't Br., p. 35.) Elsewhere, she describes it (again without citation to the record) as an "request for an investigation into the discrimination." (App't Br., p. 12.) To the extent that Liebau's "contextual" argument rests at all on the premise that she made a complaint of age discrimination to Larsen on April 30th, it fails because she has not challenged the district court's decision to disregard that factual assertion for purposes of summary judgment.

Without the distorting effects of Liebau's stricken sham declaration, there is no record support for the contention that Liebau's April 30th conversation with Larsen constitutes protected activity. Liebau, for her part, had no recollection of mentioning needing an attorney, and she testified that the first time she ever raised age-discrimination was weeks later, during the June 18th meeting. (*See* Liebau Dep. II, ECF No. 24-2, Page.ID.561, 567.) Larsen testified that Liebau met with her to discuss a work issue, after which she brought up her 2019 annual review. (Larsen Dep., ECF No. 24-12, Page.ID.683.) During the conversation, Liebau mentioned that she was concerned about the review being negative and whether she was in danger of being fired. (*Id.* at Page.ID.683.) She then made a cryptic statement that she "thought maybe she needed to get an attorney." (*Id.* at Page.ID.683.; *see also* Choma Notes, ECF No. 24-17, Page.ID.780 (reflecting the same account, as reported to her by Larsen).) Based on this record evidence, the district court found that Liebau's comments merely "express[ed] an oblique concern about being fired and needing an attorney. They d[id] not refer to discrimination or age." (MSJ Opn., ECF No. 30, Page.ID.944.)

Liebau insists that Larsen must have understood her "attorney" comment to be a complaint of age discrimination. (App't Br., p. 36.) But here again she takes liberties with the record. Larsen never stated that she understood Liebau's reference to maybe needing an attorney as a complaint of age discrimination. Rather, she said:

> I felt like she had expressed concern about getting fired and I didn't understand why. I was under the impression that she had made that comment. I didn't really -- I guess I didn't digest it as a serious allegation

of a hostile work environment. So much as a comment made out of her frustration and worry. And I didn't appreciate, at the time, why she would have any reason to be worried. So, I felt like she was being maybe overly dramatic period. You know, I didn't – it didn't sit with me as an allegation so much as her expressing some frustration." [Larsen Dep., p 65.][11]

Larsen told Guise about the comment, but not because she understood it to be a complaint of age discrimination; the comment suggested potential adversity to Dykema, which Larsen thought Firm management should be aware of. (Larsen Dep., ECF No. 24-12, Page.ID.683.)

Unable to find record support for her position, Liebau resorts to "context." She faults the district court for failing to consider the "attorney" statement in the context of her earlier complaints to Larsen about the location of the wheelchair. (App't Br., pp. 36–37.) But, even if it were true that Liebau had been making such complaints (Larsen disputed this fact), they had nothing to do with the subject of the April 30th conversation, which was her annual review. Without any reference to age-based animus, no reasonable person could have associated Liebau's cryptic statement about her performance review as a reference to age discrimination, let alone "an overt stand" against discrimination. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 288 (6th Cir.

---

[11] Liebau also cites a later portion of Larsen's deposition testimony (*see* App't Br., p. 38), but this testimony references her perspective as of July 2, 2019, by which point Liebau had explicitly accused Larsen of age discrimination during the June 18th meeting. (*See* Larsen Dep., ECF No. 24-12, Page.ID.685.)

2012) ("[A] plaintiff . . . must prove that she took an overt stand against suspected illegal discriminatory action.").

>  **2.**    **There is no evidence of a causal link between Liebau's June 18th allegation of age-based animus by Larsen and Liebau's termination.**

That leaves Liebau's June 18th accusation of age-based animus by Larsen. Even if this statement constitutes protected activity, Liebau cannot show a causal connection between it and Dykema's decision to terminate her employment.

Given the lapse of time between Liebau's June 18th complaint and her August 23rd termination, Liebau "must couple temporal proximity with other evidence of retaliatory conduct to establish causality." *Bledsoe v. Tennessee Valley Authority Bd. of Directors*, 4 F.4th 568, 587 (6th Cir. 2022). "[P]laintiff must show something more than merely a coincidence in time between protected activity and adverse employment action." *Garg v. Macomb Cty. Cmty. Mental Health Servs.*, 472 Mich. 263, 286 (2005).

And here, Liebau is missing that "something more." *Id.* In fact, the context of the timing dispels any inference that Liebau's termination was retaliation. When Liebau complained, Dykema already had placed her on probation, warning her that she needed to improve her performance to avoid termination at the end of the probation period. She already was falling behind. The setting for the June 18th complaint was a performance-improvement meeting meant to discuss Liebau's outburst toward Larsen days earlier. During that same meeting, Liebau engaged in even more unprofessional and disrespectful behavior, which led to yet another disciplinary meeting and a further

warning that termination would result if she did not turn things around. (July 1, 2019 Memo, ECF No. 20-18, PageID.404.) Her termination a month later was therefore a "natural progression of [Dykema's] preexisting concerns"—a follow through on its earlier promise to terminate if she did not improve. *Beard v. AAA of Michigan*, 593 F. App'x 447, 451 (6th Cir. 2014).

Under these circumstances, courts routinely refuse to infer retaliation where "oral and written warnings" of misconduct occurred "both before and after . . . [the plaintiff] filed the charge of discrimination." *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997); *see Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) (employee cited for work violations before and after alleged protected activity was required to directly link issuance of post-complaint citations to the protected activity). As this Court aptly put it, "An employee cannot allege discrimination like a protective amulet when faced with the possibility that his preexisting disciplinary problems could lead to his termination." *Beard*, 593 F. App'x at 451. That was precisely what Liebau tried to achieve here.

On appeal, Liebau attempts to downplay the significance of her probationary status because she did not think at that time that that termination was possible. (App't Br, p. 39.) But whether Liebau thought her termination was imminent is not the point. Liebau must present evidence that demonstrates a causal link between Dykema's decision to terminate and her engaging in protected activity. That is not possible when, as here, an employer "proceed[s] along lines previously contemplated, though not yet

41

definitively determined, in taking its adverse employment action." *Clark Cnty. Sch. Dist. v. Breeden,* 532 U.S. 268, 272 (2001) (per curiam) (stating that it is "no evidence whatever of causality"). The district court rightly concluded that Liebau's retaliation claims fail at the prima facie stage for lack of causation.

### B.    In any event, Liebau cannot show that Dykema's reasons for termination were pretext for retaliation.

Even if Liebau could satisfy a prima facie case, her retaliation claims still fail because she cannot show that Dykema's stated reasons for her discharge were a pretext.

To prove pretext in the retaliation context, a plaintiff must show that "the reason given by the employer is mistaken, foolish, trivial, or baseless." *Clay*, 501 F.3d at 714 (quotations omitted). But an accusation of retaliation "is not a vehicle for litigating the accuracy of the employer's grounds for termination." If the employer has an "honest belief" in the non-retaliatory grounds for the termination, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action." *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012).

Liebau cannot show that Choma did not honestly believe that her stated reasons for terminating Liebau *and* that her real motivation was unlawful retaliation. *Id.* Again, Liebau admitted that she does not suspect Choma of any age bias. (*See* Liebau Dep. II, p. 292 ("A. It was Chelsea Larsen that had the age bias. Q. Yeah. Not Sue Choma;

correct? A. Correct.").) And, more important, the record is devoid of any comment or conduct attributable to Choma that suggests a retaliatory mindset. Liebau points to none. Under these circumstances, Liebau cannot demonstrate that Dykema's stated reasons for termination were pretext for retaliation.

## CONCLUSION AND RELIEF REQUESTED

Defendant asks this Court to affirm the judgment below.

Respectfully submitted,

KIENBAUM HARDY VIVIANO
 PELTON & FORREST, P.L.C.

By: */s/ David Porter*
 Elizabeth Hardy (P37426)
 David Porter (P76785)
 280 N. Old Woodward Ave., Ste. 400
 Birmingham, Michigan 48009
 (248) 645-0000
 ehardy@khvpf.com
 dporter@khvpf.com

 *Attorneys for Defendant-Appellee*

Dated:  August 21, 2023

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding the part of the document exempted by Federal Rule of Appellate Procedure 32(f), this brief contains no more than 13,000 words.  This document contains 9,887 words.

2.    This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word 2013 in 14-point Garamond.

*/s/ David Porter*
David Porter (P76785)
  KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
dporter@khvpf.com

## CERTIFICATE OF SERVICE

I certify that on August 21, 2023, the foregoing document was served on all parties or their counsel of record through the CM/ECF system electronically via the Court's CM/ECF electronic filing system upon all counsel of record.

*/s/ David Porter*
David Porter (P76785)
  KIENBAUM HARDY VIVIANO
  PELTON & FORREST, P.L.C.
280 N. Old Woodward Ave., Ste. 400
Birmingham, Michigan 48009
(248) 645-0000
dporter@khvpf.com

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendant-Appellee, per Sixth Circuit Rule 28(a), 28(a)(1)-(2), 30(b), hereby

designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Defendant's Motion for Summary Judgment | 08/01/2022 | R. 20 | 255 – 428 |
| Ex. 1. Kathy Liebau Deposition I Excerpts | 08/01/2022 | R. 20-2 | 293 - 300 |
| Ex. 2. Kathy Liebau Deposition II Excerpts | 08/01/2022 | R. 20-3 | 301 - 311 |
| Ex. 3. Susan Choma Deposition Excerpts | 08/01/2022 | R. 20-4 | 312 - 324 |
| Ex. 4. Chelsea Larsen Deposition Excerpts | 08/01/2022 | R. 20-5 | 325 - 337 |
| Ex. 5. Clay Guise Deposition | 08/01/2022 | R. 20-6 | 338 - 363 |
| Ex. 6. Ayanna Clinton Deposition Excerpts | 08/01/2022 | R. 20-7 | 364 - 369 |
| Ex. 7. Administrative Assistant Job Description | 08/01/2022 | R. 20-8 | 370 - 372 |
| Ex. 8. 2017 Annual Review | 08/01/2022 | R. 20-9 | 373 - 378 |
| Ex. 9. 2018 Larsen Feedback | 08/01/2022 | R. 20-10 | 379 - 380 |
| Ex. 10. Feb. 3, 2018 Email | 08/01/2022 | R. 20-11 | 381 |
| Ex. 11. May 30, 2018 Email | 08/01/2022 | R. 20-12 | 382 - 384 |
| Ex. 12. Feb. 5, 2018 Memo | 08/01/2022 | R. 20-13 | 385 - 392 |

| | | | |
|---|---|---|---|
| Ex. 13. 2018 Guise Feedback | 08/01/2022 | R. 20-14 | 393 - 394 |
| Ex. 14. January 2018 Meeting Notes | 08/01/2022 | R. 20-15 | 395 |
| Ex. 15. 2018 Annual Review | 08/01/2022 | R. 20-16 | 396 - 400 |
| Ex. 16. May 9, 2019 Memo | 08/01/2022 | R. 20-17 | 401 - 403 |
| Ex. 17. July 1, 2019 Memo | 08/01/2022 | R. 20-18 | 404 - 405 |
| Ex. 18. May 10, 2019 Email | 08/01/2022 | R. 20-19 | 406 |
| Ex. 19. July 2019 Liebau-Stewart Out-of-Office Email Exchange | 08/01/2022 | R. 20-20 | 407 |
| Ex. 20. Termination Letter | 08/01/2022 | R. 20-21 | 408 - 409 |
| Ex. 21. Susan Choma Declaration | 08/01/2022 | R. 20-22 | 410 - 411 |
| Ex. 22. Diana Marshall Declaration | 08/01/2022 | R. 20-23 | 412 - 413 |
| Ex. 23. Sept. 28, 2017 Email | 08/01/2022 | R. 20-24 | 414 |
| Ex. 24. July 2019 Liebau-Choma Out of Office Email Exchange | 08/01/2022 | R. 20-25 | 415 - 417 |
| Unpublished Cases | 08/01/2022 | R. 20-26 | 418 - 428 |
| | | | |
| Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment | 09/01/2022 | R. 24 | 433 - 821 |
| Ex. 1. Kathleen Liebau Deposition Transcript (Vol. I and II) | 09/01/2022 | R. 24-2 | 466 - 607 |

| | | | |
|---|---|---|---|
| Ex. 2. 01/10/13 email changing job title | 09/01/2022 | R. 24-3 | 608 - 609 |
| Ex. 3. Roster for Consumer Matters Team Members | 09/01/2022 | R. 24-4 | 610 |
| Ex. 4. Clay Guise Deposition Transcript | 09/01/2022 | R. 24-5 | 611 - 655 |
| Ex. 5. Guise 2015 Performance Review | 09/01/2022 | R. 24-6 | 656 - 657 |
| Ex. 6. Guise 2016 Performance Review | 09/01/2022 | R. 24-7 | 658 - 659 |
| Ex. 7. Guise 2017 Email to Choma | 09/01/2022 | R. 24-8 | 660 |
| Ex. 8. Guise 2018 Performance Review | 09/01/2022 | R. 24-9 | 661 - 662 |
| Ex. 9. Larsen 2018 Performance Review | 09/01/2022 | R. 24-10 | 663 - 664 |
| Ex. 10. Larsen 2019 Performance Review | 09/01/2022 | R. 24-11 | 665 |
| Ex. 11. Chelsea Larsen Deposition Transcript | 09/01/2022 | R. 24-12 | 666 - 709 |
| Ex. 12. Declaration of Kathleen L. Liebau | 09/01/2022 | R. 24-13 | 710 - 714 |
| Ex. 13. Susan Jean Choma Deposition Transcript | 09/01/2022 | R. 24-14 | 715 - 760 |
| Ex. 14. Defendant's Answers to Plaintiff's First Interrogatories | 09/01/2022 | R. 24-15 | 761 - 775 |
| Ex. 15. Choma 2019 Performance Review | 09/01/2022 | R. 24-16 | 776 - 779 |

| | | | |
|---|---|---|---|
| Ex. 16. Choma Notes | 09/01/2022 | R. 24-17 | 780 - 783 |
| Ex. 17. Larsen Email to Choma May 6, 2019 | 09/01/2022 | R. 24-18 | 784 - 785 |
| Ex. 18. May 9, 2019 Memo | 09/01/2022 | R. 24-19 | 786 |
| Ex. 19. Guise May 16, 2019 Email | 09/01/2022 | R. 24-20 | 787- 788 |
| Ex. 20. Termination Letter | 09/01/2022 | R. 24-21 | 789 - 790 |
| Ex. 21. Choma July 1, 2019 Memo | 09/01/2022 | R. 24-22 | 791 - 792 |
| Ex. 22. Job Description | 09/01/2022 | R. 24-23 | 793 - 795 |
| Ex. 23. Time Card Policy | 09/01/2022 | R. 24-24 | 796 |
| Unpublished Cases | 09/01/2022 | R. 24-25 | 797 - 821 |
| | | | |
| Defendant's Reply in Support of Its Motion for Summary Judgment | 09/22/2022 | R. 26 | 825 - 837 |
| Ex. 25. Liebau Dep. II | 09/22/2022 | R. 26-1 | 834 - 837 |
| | | | |
| Defendant's Motion To Supplement The Record | 01/26/2023 | R. 29 | 841 - 914 |
| 2016 Staff Performance Evaluation | 01/26/2023 | R. 29-1 | 845 - 848 |
| 2016 Staff Performance Self-Evaluation | 01/26/2023 | R. 29-1 | 849 - 854 |
| 2016 Administrative Assistant Timekeeper Feedback Form (Guise Feedback) | 01/26/2023 | R. 29-1 | 855 - 856 |

| July 28, 2015 Choma Memo | 01/26/2023 | R. 29-1 | 857 |
|---|---|---|---|
| July 30, 2015 Choma Memo | 01/26/2023 | R. 29-1 | 858 |
| July 16, 2015 Email chain | 01/26/2023 | R. 29-1 | 859 |
| 2015 Staff Performance Self-Evaluation (Liebau) | 01/26/2023 | R. 29-1 | 860 - 864 |
| 2015 Staff Performance Evaluation (Evaluator: Choma) | 01/26/2023 | R. 29-1 | 865 - 867 |
| 2014 Staff Performance Evaluation (Evaluator: Choma) | 01/26/2023 | R. 29-1 | 868 - 873 |
| 2014 Administrative Assistant Timekeeper Feedback form (2013 Results) | 01/26/2023 | R. 29-1 | 874 - 875 |
| 2014 Administrative Assistant Timekeeper Feedback form (2013 Results) (Evaluator: Guise) | 01/26/2023 | R. 29-1 | 876 - 877 |
| 2014 Staff Performance Self-Evaluation (Liebau) | 01/26/2023 | R. 29-1 | 878 - 882 |
| 2013 Staff Performance Evaluation (Evaluator: Choma) | 01/26/2023 | R. 29-1 | 883 - 887 |
| 2013 Staff Performance Self-Evaluation (Liebau) | 01/26/2023 | R. 29-1 | 888 - 892 |
| January 29, 2013 Guise Email | 01/26/2023 | R. 29-1 | 893 |
| 2013 Succe$$ Bonus Plan (2012 Results) (Evaluator: Choma) | 01/26/2023 | R. 29-1 | 894 - 895 |

| | | | |
|---|---|---|---|
| Spotlite Award | 01/26/2023 | R. 29-1 | 896 |
| 2012 Staff Performance Evaluation (Evaluator: Choma) | 01/26/2023 | R. 29-1 | 897 - 901 |
| 2012 Staff Performance Self-Evaluation (Liebau) | 01/26/2023 | R. 29-1 | 902 - 906 |
| 2012 Administrative Assistant Timekeeper Feedback Form (Evaluator: Guise) | 01/26/2023 | R. 29-1 | 907 - 908 |
| May 23, 2016 Choma Email | 01/26/2023 | R. 29-1 | 909 |
| July 28, 2015 Choma Memo | 01/26/2023 | R. 29-1 | 910 |
| July 16, 2015 Email | 01/26/2023 | R. 29-1 | 911 |
| July 30, 2015 Choma Memo | 01/26/2023 | R. 29-1 | 912 |
| July 27, 2015 Choma Email | 01/26/2023 | R. 29-1 | 913 |
| November 24, 2014 Email – Schultz to Choma | 01/26/2023 | R. 29-1 | 914 |
| | | | |
| Opinion and Order Granting Defendant's Motion for Summary Judgment | 03/02/2023 | R. 30 | 915 - 946 |

492253

51