UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

—————————————————————

Appeal No. 23-1301

—————————————————————

**KATHLEEN LIEBAU**
Plaintiff-Appellant

v.

**DYKEMA GOSSETT, PLLC**
Defendant-Appellee

—————————————————————

**PLAINTIFF-APPELLANT'S REPLY BRIEF**

—————————————————————

On Appeal from the United States District Court
for the Eastern District of Michigan
Southern Division
Case No. 4:21-cv-11823
Honorable Shalina D. Kumar

—————————————————————

STERLING ATTORNEYS AT LAW, P.C.
Attorneys for Plaintiff-Appellant
Brian J. Farrar (P79404)
33 Bloomfield Hills Pkwy., Ste. 250
Bloomfield Hills, MI 48304
(248) 644-1500

—————————————————————

**Oral Argument Requested**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. ii

INTRODUCTION ...................................................................... 1

ARGUMENT ........................................................................... 2

    I.    The District Court correctly held that Larsen's age-mocking behavior raised an inference of discrimination for purposes of establishing a prima facie case ............................................... 2

    II.    Liebau has set forth sufficient evidence for a jury to decide whether Dykema's purported reasons for termination are pretextual ...................................................................... 8

        A.    Questions of fact exist as to whether Larsen was a decisionmaker ................................................... 8

        B.    There is no evidence Choma did an independent investigation sufficient to undermine Liebau's Cat's Paw theory ........................................................ 9

        C.    Liebau has sufficiently cast doubt on Dykema's purported reasons for her termination ............................ 11

    III.    The District Court erred in granted Dykema summary judgment on Liebau's retaliation claim..................................... 13

CONCLUSION ........................................................................ 15

# TABLE OF AUTHORITIES

## Case Law

*Anderson v Liberty Lobby, Inc,* 477 US 242 (1986) ................................................. 3

*Bacon v Honda of Am Mfg, Inc,* 370 F3d 565 (6th Cir 2004) ................................ 4

*Chen v Dow Chem Co,* 580 F3d 394 (6th Cir 2009) ............................................... 8

*Ercegovich v Goodyear Tire & Rubber Co,* 154 F3d 344 (6th Cir 1998) .............. 3, 7

*Fuentes v Perski,* 32 F3d 759 (3d Cir 1994) ....................................................... 13

*Grosjean v First Energy Corp,* 349 F3d 332 (6th Cir 2003) .................................. 6

*Hartley v Wisc Bell,* 124 F3d 887 (7th Cir 1997) .................................................. 6

*Hertz v Luzenac America,* 370 F3d 1014 (10th Cir 2004) ..................................... 12

*Hidden Vill, LLC v City of Lakewood, Ohio,* 867 F Supp 2d 920
  (ND Ohio, 2012), aff'd in part, rev'd in part 734 F3d 519 (6th Cir 2013) ........ 3

*Norfolk & W Ry Co v McKenzie,* 116 F2d 632 (6th Cir 1941) ............................. 13

*Middleton v Reynolds Metals Co,* 963 F2d 881 (6th Cir 1992) ............................ 14

*Reeves v Sanderson, Plumbing Products,* 530 US 133 (2000) ............................... 8

*Risch v Royal Oak Police Dep't,* 581 F3d 383 (6th Cir 2009) ............................... 4

*Rowe v Cleveland Pneumatic Co, Numerical Control, Inc,* 690 F2d 88
  (6th Cir 1982) ................................................................................................ 11

*Texas Dep't of Cmty Affairs v Burdine,* 450 US 248 (1981) .................................. 4

*Winter v Fitness USA Health Spas Corp-Flint/Lansing,* 1999 WL 33430030,
  p *2 (Mich App) (Nov 12, 1999) .................................................................. 5

## INTRODUCTION

In its opposition brief, defendant-appellee Dykema Gossett, PLLC ("Dykema") makes no attempt to justify the blatantly ageist comments and behaviors directed towards Liebau by her supervisor, Chelsea Larsen. The reason for this is obvious: Larsen's mockery of Liebau's age is indefensible. Nor does Dykema attempt to explain why a long-term employee such as Liebau, with over three decades of generally positive reviews, suddenly developed performance issues serious enough to warrant her termination. There is no dispute that nearly all of these alleged performance issues Dykema relies upon to justify Liebau's termination occurred *after* she began reporting to the same attorney who openly expressed ageist animus towards her. To the extent any alleged issues predated Liebau's placement on Larsen's team, a reasonable jury could conclude they were too remote and/or insignificant to actually justify termination.

Since Dykema cannot defend Larsen's bias, Dykema argues that it cannot be held liable because Larsen purportedly was not a decisionmaker in Liebau's termination. As explained in Liebau's original appeal and further set forth herein, Dykema's argument misstates the record and casts aside several disputed material facts concerning Liebau's termination. In sum, Dykema has not

1

presented any persuasive argument to convince this Court to uphold the district court's decision granting summary judgment.

For the reasons set forth herein and in Liebau's original Brief on Appeal, this Court should reverse the District Court's grant of summary judgment and remand this case for further proceedings.

## ARGUMENT

**I.**    **The District Court correctly held that Larsen's age-mocking behavior raised an inference of discrimination for purposes of establishing a prima facie case.**

In its opposition brief, Dykema takes issue with the District Court's holding that Liebau established a prima facie case based on Larsen's age-mockery. According to Dykema, Larsen's discriminatory actions towards Liebau should be given no weight because Larsen was purportedly not a decision maker. As an initial matter, whether Larsen was a decisionmaker is strongly contested. The record is replete of examples of Larsen forwarding negative information about Liebau to Office Manager Susan Choma, and the partner-in-charge Clay Guise, and then meeting with each of them to discuss Liebau. Moreover, Larsen testified that she was even considering whether or not to terminate Liebau (Larsen, R 24-12, PageID 687-88).

In its opposition brief, Dykema argues that any inference based on Larsen's testimony that she was considering whether or not to terminate Liebau is contradicted because earlier in the same answer Larsen testified that firing

Liebau was not her call (*id*, 688). Viewing all the testimony, a reasonable jury could find Larsen's self-serving statement that she could not fire Liebau as not credible in light of her subsequent statement that Larsen was considering whether *she* – not Choma or anyone else at the firm – should fire Liebau. In any event, this apparent contradiction in Larsen's testimony, which goes to her overall credibility, should be decided by a jury. See *Anderson v Liberty Lobby, Inc,* 477 US 242, 255 (1986) ("[c]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

But even if this Court finds there is no question of fact as to whether Larsen had decision-making authority, Larsen's discriminatory actions and statements are still probative for purposes of establishing a prima facie case. See *Ercegovich v Goodyear Tire & Rubber Co,* 154 F3d 344, 356–57 (6th Cir 1998) (even comments by a non-decisionmaker can establish the existence of a "discriminatory atmosphere at the defendant's workplace" and can "add color to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff"); see also *Hidden Vill, LLC v City of Lakewood, Ohio*, 867 F Supp 2d 920, 945 (ND Ohio, 2012), aff'd in part, rev'd in part 734 F3d 519 (6th Cir 2013) (a non-decisionmaker's statement "still aids [plaintiff] in establishing its *prima facie* case").

Here, Larsen was an attorney at the firm to whom Liebau was directly assigned, and who was unquestionably higher than Liebau in the firm's hierarchy. Thus, even if this Court finds that Larsen was not a decisionmaker for in Liebau's termination, Larsen's discriminatory statements and actions as an attorney at the firm can, at a minimum, shed light on a discriminatory culture. *Risch v Royal Oak Police Dep't,* 581 F3d 383, 393 (6th Cir 2009) ("[d]iscriminatory statements made by individuals occupying managerial positions can be particularly probative of a discriminatory workplace culture"). Since Larsen was certainly a manager to whom Liebau reported on a daily basis, Larsen's actions and statements are still properly considered for purposes of establishing a prima facie case.

Since, at the very least, a discriminatory inference can reasonably be drawn from Larsen's words and actions, Liebau has met the relatively low threshold of establishing a prima facie case. See *Bacon v Honda of Am Mfg, Inc*, 370 F3d 565, 572 (6th Cir 2004) ("the Court has been cognizant of the difficulties inherent in proving discrimination and therefore set a relatively low bar for establishing a prima facie case") citing *Texas Dep't of Cmty Affairs v Burdine,* 450 US 248, 253 (1981).

Because Liebau has established a prima facie case based on Larsen's behavior, this Court need not consider whether Liebau has properly identified a

similarly situated comparator, which is another way a plaintiff can establish a prima facie case. However, even assuming more evidence is necessary at this stage, Liebau's evidence of Larsen's favorable treatment towards her younger co-worker, Robin Kowalski, also satisfies the "relatively low bar" for a prima facie case.

In its opposition brief, Dykema seems to acknowledge that Liebau and Kowalski shared the same job responsibilities given the undisputed fact that they were both managed day-to-day by Larsen, and both identified on firm documents as having the same job title (Paralegals) and performing the same tasks (R 24-4, PageID 610). Instead, Dykema now argues that Kowalski is not a proper comparator because Kowalski is not *substantially* younger than Liebau and purportedly did not engage in the same conduct as Liebau did.

With regard to the *substantially younger* argument, while this Court generally requires any replacement be at least six years younger (i.e., "substantially younger") to prove a prima facie case under the ADEA using evidence that an employee was replaced by someone else, it is less clear whether such an age differential is still required when showing unequal treatment vis-à-vis a comparator. Notably, under Liebau's ELCRA claim, there is no requirement that any replacement be *substantially younger* in an age discrimination case. See generally *Winter v Fitness USA Health Spas Corp-*

*Flint/Lansing*, 1999 WL 33430030, p *2 (Mich App) (Nov 12, 1999) (unlike the ADEA, Michigan law does not require the other employee be ***substantially younger*** as long as he/she is younger than plaintiff).

Even if this Court finds Liebau's comparator must be substantially younger for purposes of establishing a prima facie case, there is yet another way for Liebau to prevail under this standard. "In cases where the disparity is less [than substantial], the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant" *Grosjean v First Energy Corp*, 349 F3d 332, 339 (6th Cir 2003) citing *Hartley v Wisc Bell,* 124 F3d 887, 893 (7th Cir 1997). Here, Larsen admitted that she did not know how old Kowalski is (R 24-12, PageID 682). Larsen did, however, know Liebau was over the age of the 50. Due to the fact Larsen planned and participated in Liebau's 50th birthday party which included ageist stereotypes, a reasonable jury could conclude that for whatever reason Larsen considered Liebau's age of 50 to be ***significant***. In other words, the fact that Kowalski may have also been inside the protected class is irrelevant – what matters is not Kowalski's actual age but how Larsen viewed Liebau's age in comparison to Kowalski's.

Next, Dykema argues Kowalski is not similarly situated because she allegedly did not engage in similar conduct. However, Liebau is not required to

show an exact correlation between her alleged conduct and that of her younger co-worker in order for Kowalski to be considered "similarly situated." *Ercegovich,* 154 F3d at 352–53. Rather than follow an overly formulaic approach when considering these factors, courts should undergo an independent determination of relevant aspects of a comparator's conduct and employment status. *Id* at 352.

At her deposition, Liebau has provided multiple examples of Larsen treating Kowalski better than she treated Liebau. For instance, unlike she did to Liebau, Larsen did not park a wheelchair by Kowalski's desk and constantly ask Kowalski when she was going to retire. When Kowalski made errors in her work product, Larsen did not promptly forward those alleged performance complaints to her superiors. Larsen did not repeatedly criticize the quality and tempo of Kowalski's work, like she did for Liebau, even though Liebau was working faster and harder than other paralegals on the team, including Kowalski.

In sum, while Larsen's discriminatory treatment of Liebau creates an inference of discrimination, Larsen's unequal treatment of Liebau compared to the younger Kowalski provides even further evidence in support of age discrimination. Either way, the District Court properly found that Liebau established a prima facie case.

## II. Liebau has set forth sufficient evidence for a jury to decide whether Dykema's purported reasons for termination are pretextual.

In discrimination cases, pretext "is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" *Chen v Dow Chem Co,* 580 F3d 394, 400, n 4 (6th Cir 2009). The overarching question is whether there is evidence "sufficient to support an inference of discrimination at trial." *Id.* When a plaintiff has presented enough evidence at the prima facie stage that supports an inference of discrimination, no further evidence is needed to show pretext. See *Reeves v Sanderson, Plumbing Products,* 530 US 133, 149 (2000) (rejecting "the premise that a plaintiff must always introduce additional, independent evidence of discrimination" beyond that presented in his or her prima facie case in order to prove pretext).

Liebau was a nearly 35-year employee at Dykema. Larsen's age-mocking behavior towards Liebau coupled with the suspicious timing of Liebau's alleged performance issues should be sufficient evidence for a jury to question Dykema's reasons for firing her. Thus, the District Court's dismissal of this case at summary judgment should be reversed.

### A. Questions of fact exist as to whether Larsen was a decisionmaker.

In its opposition brief, Dykema once again argues that Larsen's age bias cannot be imputed to it because Larsen was not a decisionmaker. As previously discussed herein, and in the original appeal brief, Dykema's position

8

misconstrues the record concerning Larsen's actual role in Liebau's termination, and the influence she wielded over Choma. Since Dykema cannot justify Larsen's age-related animus towards Liebau, Dykema's fallback argument is that Larsen's behavior does not matter because, according to Dykema, Choma (the office manager) purportedly decided to fire Liebau on her own. Dykema's argument ignores the facts in this case and the reality of how law firms operate. Dykema ignores the fact that all of its adverse employment actions taken against Liebau – from her probation to her termination – all occurred in response to complaints forwarded to Choma by Larsen.

**B.      There is no evidence Choma did an independent investigation sufficient to undermine Liebau's Cat's Paw theory.**

Dykema also argues that the Cat's Paw theory of liability should not apply here because, according to Dykema, "Choma was no dupe" and made an independent decision to fire Liebau. Yet, the record is devoid of any "investigation" Choma purportedly did concerning Liebau. Instead, every probation letter, negative review, or disciplinary meeting that Choma was involved in was instigated by the tsunami of false, negative performance criticisms forwarded to Choma from Larsen. In fact, when Liebau attempted to demonstrate to Choma that the information given to her by Larsen was inaccurate, Choma refused to hear it (R 24-13, PageID 712 ¶12). Choma's outright to refusal to hear any information that was not originating from Larsen

severely undercuts the argument that Choma was engaged in any kind of independent factfinding.

Moreover, Choma had practically no first-hand knowledge of Liebau's job performance during the last year of Liebau's employment, and admits she only personally observed Liebau's work "very few times" (R 24-14, PageID 720-21).

Dykema claims in its opposition brief that Choma decided to terminate Liebau based on allegedly unprofessional interactions she had with Liebau and Liebau's alleged refusal to accept direction while on probation. Liebau has repeatedly denied engaging in such conduct. But what Dykema refuses to acknowledge is that each of those interactions Choma is referring to occurred due to false information provided to her by Larsen. For instance, a reasonable jury could find that those disciplinary meetings in June and July 2019 with Choma and Larsen would never have occurred had Larsen not caused Choma to initiate the disciplinary process based on false allegations. The reason Larsen was at those disciplinary meetings was because Larsen was the one who provided the information to Choma in the first place.

Thus, Dykema's argument that Cat's Paw should not apply because Larsen supposedly had no influence over Choma's actions is without merit.

### C.  Liebau has sufficiently cast doubt on Dykema's purported reasons for her termination.

In her original appeal brief, Liebau cast doubt on each of Dykema's purported reasons for firing her, and whether they actually motivated Dykema's actions. In its opposition brief, Dykema acknowledges that Liebau was competent at her job. However, Dykema continues to promote its narrative that it terminated Liebau for unprofessional behavior – including alleged disrespectful interactions with Larsen. However, Dykema does not rebut the principle that employment decisions based on subjective criteria such as an employee's tone or demeaner "will be *carefully scrutinized* in order to prevent abuse." *Rowe v Cleveland Pneumatic Co, Numerical Control, Inc*, 690 F2d 88, 93 (6th Cir 1982).

At all times, Liebau has denied that she was ever unprofessional or disrespectful. Choma or Larsen's subjective assessments of Liebau's "tone" or workplace demeanor must be carefully scrutinized and left up to a jury. This especially true given the fact that Larsen even acknowledged Liebau's demeanor at the meeting in question was consistent with how Liebau had conducted herself throughout her long career at Dykema.

In addition to the meeting with the Larsen and Choma in which the alleged "honey" statement was made, Dykema also argues in its opposition brief that Liebau was allegedly disrespectful to Larsen during other encounters.

However, Dykema fails to address why such behavior by Liebau, even if true, would not be excused in light of Larsen's discriminatory behavior towards her. See *Hertz v Luzenac America*, 370 F3d 1014, 1021-22 (10th Cir 2004) (excusing certain unprofessional behavior when made in response to discrimination). Dykema also glosses over the important fact that Liebau's alleged unprofessional interactions with Larsen and Choma in June and July 2019 occurred at the same time Liebau had complained of age discrimination (Larsen, R 24-12, PageID 682; Choma, R 24-14, PageID 733).

As stated in the original appeal brief, the other alleged reasons for Liebau's termination (i.e., purported unauthorized use of overtime, unauthorized work from home, and tardiness) occurred over a year and a half before Liebau's termination (R 20-13, PageID 385-86). Therefore, a reasonable juror could conclude they were too remote to have actually influenced Dykema's decision to terminate Liebau. Interestingly, these dated allegations 2018 have something in common with the allegations concerning Liebau's June 18 demeanor: they are the only ones Choma actually had first-hand knowledge of. Out of all the alleged misconduct, those in which Choma had direct knowledge of happen to be most easily refuted. This further undermines Dykema's argument that Choma was the driving force behind Liebau's termination.

Finally, Dykema fails to address Liebau's argument that if a juror disbelieves one material fact to which a witness testifies, that juror can disregard

the witness' remaining testimony. *Norfolk & W Ry Co v McKenzie*, 116 F2d 632, 635 (6th Cir 1941) ("*falsus in uno, falsus in omnibus*, … The jury may disregard the evidence altogether and should do so if the witness has willfully sworn falsely to a material fact"). Thus, even if this Court determines that Liebau has raised a question of fact as to some, but not all of, Dykema's purported reasons for firing her, summary judgment is still inappropriate. See *Fuentes v Perski*, 32 F3d 759, 764-765 n 7 (3d Cir 1994) ("[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast doubt on a fair number of them, the plaintiff may not need to discredit the remainder").

    As explained above, Liebau has cast sufficient doubt on whether these were the true reasons for her termination. Thus, summary judgment should not have been granted.

## III.  The District Court erred in granted Dykema summary judgment on Liebau's retaliation claim.

    In its opposition brief, Dykema continues to wrongfully assert that the first time Liebau complained of age discrimination was on June 18, 2019. Notwithstanding anything in Liebau's deposition or her declaration, it is undisputed that on April 30 – a month and a half prior – she informed Choma she was getting an attorney. Dykema now tries to argue that Larsen never understood Liebau's attorney comment as a serious allegation and only forwarded it to the partner-in-charge because her comment was potentially

adverse to Dykema. In any event, Larsen's motivations for notifying the partner-in-charge of Liebau's comment should be decided by a jury, not at summary judgment. *Middleton v Reynolds Metals Co*, 963 F2d 881, 882 (6th Cir 1992) (summary judgment is inappropriate when there are questions of intent).

Moreover, even assuming June 18 was the earliest Liebau engaged in protected activity, Dykema claims that the reason Choma did not document Liebau's alleged timekeeping anomalies in her prior communications were because those alleged infractions did not occur until July. This fact undercuts Dykema's argument that it could not have retaliated against Liebau for her June 18 complaint of age discrimination because it claims Liebau was already on probation and about to be terminated. However, Dykema now concedes in its opposition brief that at least one of its alleged reasons for termination had not even occurred yet when Liebau engaged in protected activity. The fact that Dykema began writing Liebau up for alleged timekeeping infractions ***after*** Liebau's protected activity is yet another reason a jury could infer retaliation.

Finally, Larsen even admits that Liebau's complaint of age discrimination prompted her to send Choma additional negative information about Liebau.

14

| 11 | Q. | Why did you think it was important to notify Sue? |
| 12 | A. | Because, at this point, there was conflict.  At this |
| 13 | | point, Kathy had accused me of being dishonest.  She |
| 14 | | had indicated she thought that I was discriminating |
| 15 | | against her based on age.  And she had suggested she |
| 16 | | was going to get an attorney.  And so, I felt like it |
| 17 | | was important to document this kind of an issue. |

(R 24-12, PageID 682). Since a reasonable jury could conclude Choma relied on this negative information for the termination, Liebau has presented yet additional evidence of retaliation.

## CONCLUSION

This case is not just about a birthday "gag" as Dykema likes to call it. This is about an attorney's sustained campaign to humiliate and mock an older colleague, that resulted in that older employee being terminated.

Dykema is free to argue to a jury why it believes it was justified in firing its nearly 35-year employee. But Liebau is equally entitled to have a jury determine the *real* reason Dykema fired her.

For these reasons and those set forth in the original appeal brief, Plaintiff-Appellant respectfully requests an Order reversing the District Court's grant of summary judgment and remanding this case for trial.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Brian J. Farrar
          Brian J. Farrar (P79404)
          Attorneys for Plaintiff-Appellant
          33 Bloomfield Hills Pkwy., Ste. 250
          Bloomfield Hills, MI 48304
Dated: September 11, 2023      (248) 644-1500

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing Brief complies with the type-volume limitation provided in Fed R App P 32(a)(7)(B) because it contains 3216 total words in Calisto MT (14 point) proportional type. The word processing software used to prepare this brief was Microsoft Word 2016.

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Brian J. Farrar
        Brian J. Farrar (P79404)
        Attorneys for Plaintiff-Appellant
        33 Bloomfield Hills Pkwy., Ste. 250
        Bloomfield Hills, MI 48304
        (248) 644-1500

Dated: September 11, 2023

## CERTIFICATE OF SERVICE

This certifies that Plaintiff-Appellant's Corrected Appeal Brief was served on September 11, 2023, by electronic mail using the CM/ECF system upon the following attorneys:

Respectfully submitted,

STERLING ATTORNEYS AT LAW, P.C.

By:   /s/ Brian J. Farrar
             Brian J. Farrar (P79404)
             Attorneys for Plaintiff-Appellant
             33 Bloomfield Hills Pkwy., Ste. 250
             Bloomfield Hills, MI 48304
             (248) 644-1500

Dated: September 11, 2023

### DESIGNATION OF RECORD

| Doc. Entry No. | Date Entered | Description of Doc. | Page ID |
|---|---|---|---|
| | | | |
| R 24-4 | 09/01/2022 | Roster for Consumer Matters Team Members | 610 |
| R 24-12 | 09/01/2022 | Larsen deposition | 682, 687-688 |
| R 24-13 | 09/01/2022 | Liebau Declaration | 712 |
| R 24-14 | 09/01/2022 | Choma deposition | 720-721, 733 |
| R 20-13 | 08/01/2022 | Feb 2018 Memo | 385-86 |
| R 24-23 | 09/01/2022 | Job Description | 793-95 |